Judge Gh ah a ji
delivered the opinion of the Court.
On the 7th oí January, 1846, Samuel D. Sublett executed to Mary Jackson, executrix of John Jackson, deceased, his note for $380, due twelve months after date. The payee died, and in 1848 Francis W. Jackson, a son of her intestate, brought an action and obtained a judgment at law, upon which an execution issued, and was levied by the Sheriff upon a negro man named Daniel. Mrs. Margaret Subtlett, the wife of the defendant, claimed the negro as her property, and a jury empaneled by the Sheriff to try the right of property, found *468 a verdict that the negro was not subject to sale to satisfy the execution. The plaintiff having indemnified the Sheriff, he was about to sell the slave, when said Margaret Subtlett, by her next friend, filed this bill in chancery to prevent the sale.
íhe grounds of complainants for relief-John Jackson’s will.-
íhe provisions of the act of 23d February, 18-16, relied upon.
The facts upon which she founds her claim, and which are not controverted, are, that in the year 1838 John Jackson, the father of said Margaret, made and published his last will and testament, and died before April 1841, at which time the will was admitted to record. By his will he gives to his wife a life estate in his negi’oes and some other property, and makes a few specific devises and bequests to others, and then in the fifth clause says; “It is my will and desire that all of my negroes not herein otherwise disposed of together with their increase, (should there be any,) likewise all the living stock that may be in my wife’s possession, be as equally divided as possible, at her death, between my daughters Margaret C. Sublett, Martha W. Sloss, Mary Ann V. Atcheson and Antheline E. Jackson, should any of them die before such division, their children are to have their mother’s share.” The widow of the testator died in the year 1847. After her death, the slaves alluded to in the clause just quoted were by the husbands of the daughters (Antheline having in -the meantime married Valentine) divided between them. The slave Daniel, with others, fell to the share of Sublett, who immediately took him into possession, and whilst in his possession the execution against him, was levied upon the slave as already stated.
The complainant claims that by the will of her father, she has an interest in the slave separate from her husband, and that by the act of Assembly, approved February 23d, 1846, entitled .“an act further to protect the rights of married women,” the said slave is not liable to be levied on or sold for the debts of her husband. That act among other things says, “that the slave or slaves of a married woman shall, hereafter, within this Commonwealth, be held and taken to be real estate, in so far that no slave or slaves, or the increase *469 thereof, which any such married woman may have at the time of her marriage, or which may come, or be devised or given to her during her coverture, shall be liable to the debts of her husband, or be attached, levied on, or sold, for his debts, or liabilities of any sort or kind, whether such liabilities accrued before or after marriage; nor shall the life estate of the husband, his wife living, be levied on executed or sold, for any such debts or liabilties.” This act is not confied in its operation to marriages subsequent to its date, nor so far as the question of the liability of propez'ty to levy and sale is concerned, is it important at what period the debts were incurred by the husband.
To render the &ePeoa’he wife’ l!able for debts’ &o. The debt must “be eontedCtejointly°refñ wife'”
A vested remainder in slaves, which vested prior to the act of 23d February, 1846, entitled “an act further to protect the rights of married women’1 but which did not come to the possession of the feme until after that date, when the life estate determined; held to be liable for the debts of the husband of the tenant in remainder.
Before examining into the meaning of that portion of the law already quoted, we will dispose of another question raised by the plaintiff in error, viz, that the consid- , , . ©ration of the note sued upon was necessaries furnished for the family of complainant, and, therefore, the slave is not exempt from levy and sale. Without determining whether the proof is sufficient to establish the fact, the proposition is answered by saying that the debt was not “contracted or created jointly in writing by husband and wife,” and, therefore, does not come within the provision of the statute which makes the property of the wife in such case liable.
The only remaining and important matter to be determined is, whether the complainant has such a separate interest in the slave in contest as to exempt him from levy and sale to satisfy the husband’s debts. We learn from the decree in this cause, that inasmuch as the life estate did not terminate, and a division of property was not had among the daughters or their husbands, until the year 1847, the Judge regarded the slave', as not having “come” to the complainant until a period subsequent to the act of 1846, and as, therefore, not liable to the husband’s debts. Whether the Legislature, by the use of the word “come,” intended to apply it to the time when actualposession and use should take place, or to the time when the wife should acquire an interest in the property by any other means *470 than by descent or devise or gift during coverture, we deem it unnecessary to determine. But if the act was intended to have reference to the time only when possession come, although the legal right to the property had previously vested in the husband, according to the law in force before its enactment, then we think it should be regarded as inoperative, because the Legislature cannot take away vested rights without giving an adequate compensation therefor. Did the will of her father give her such an interest in the property, as was vendible, or was transmissible by bequest or descent, previous to the death of her mother?
Bowling’s Rep’s. vs Dobynis Ad’ r. cited and approved:
“Tested remainders are those by which a present interest passes to the party, though to be enjoyed in future, and by which the estate is invariably fixed to a determinate person after a particular estate is spent:” (5 Dana, 441.) “When the absolute property in a fund is bequeathed in fractional interests in succession, at periods which must arrive: as to, or in trust for A for life, and after his death to B, the interests of the first and subsequent taker will vest together, and notwithstanding B may die before A his personal representatives will be entitled to receive the legacy upon the death of A.” (1 Roper on Legacies, 394.)
The facts in the case of Bowling’s Representatives vs Dobyns Administrator, (reported in 5 Dana, 434,) seem to be very analagous to the present. In the last will of Robert Bowling, made in 1809, is the following clause: “I give and bequeath to my dearly beloved wife, Polly, all my estate during her natural life, (except four hundred dollars worth of horses, which I give to Hanson Price.) And after my wife’s death it is my will and desire that my son, Samuel Bowling, shall have two mulatto men, named Hanson and Dennis; and the balance of the whole of my estate, after all just debts are paid, and schooling my two children, Samuel and Nancy, shall be equally divided between my two children Samuel and Nancy.” In that case Samuel Bowling had died leaving his mother living. The administrators of Dobyns brought a suit in chancery for a settlement of *471 partnership accounts between Bowling and Dobyns, and for a decree to subject his estate to satisfy the amount which might be found to be due to Dobyns. A certain sum having been ascertained to be due, the Court below, among other things, decreed that the aforesaid remainder in the slaves, left by the will of Bowling’s father, to his mother for life, in remainder to himself and sister, should be sold, &c., and the question was thus presented to the Appellate Court whether Samuel Bowling had such a vested interest in the estate devised to his mother for life remainder to him and his sister, as could be subjected and sold for the payment of his debts. In construing that portion of the will, which has been already quoted, the Court say, “'the testator evidently intended to make a disposition of his whole estate for life to his wife, and in remainder to his two-children, which constituted the whole fee simple in his entire, estate. To be divided between my two children includes noton only a devise to them, but also the character of the devise, to-wit, a tenancy in common, and while he vests the title of the whole fee simple estate in his wife and children, he does not carve out of it or vest a title in any one for payment of debts,” &c. (Ibid, 439.) Divest that will of so much of it as speaks of the horses given to Price, the negroes given specifically to Samuel Bowling, and the charge for paying debts and schooling children, .the remaining portion of it is almost precisely like Jackson’s will in this case.
A vested remainder gives an-immediate fixed right of filture: enjoyment--an. estate in presentí: (1 Cruise 181.)
“The person entitled to a vested remainder has an immediate, fixed right of future enjoyment, that is, an estate in presentí, though it can only take effect in possession and pernency of the profits at a future period: (1 Cruise, 181.) Again: “If there be a lease for life to A, remainder to B for life, although the remainder to B for life, may possibly never take effect in possession, because B may die before A, yet from- the very instant of its limitation, it is capable of taking effect in possession, if the possession were to fall by the death of A. It is, therefore, vested in interest, though perhaps so vested that it may determine, by B’s death *472 before the possession he waits for may become vacant.” (Fearne on Contingent remainders, 329.)
A devise over ■upon a contin gency does not prevent the legacy from vesting ■in the meantime, provided the words be in oth■er respects sufficient to pass a present interest: \Roper on Legacies, 403.)
These and other authorities quoted in that opinion, brought the Court to the conclusion that although the life estate of his mother had not terminated at the death of Samuel Bowling, yet his interest in remainder in the slaves, was such as could properly be subjected to sale to satisfy his debts. In this case the devisee in remainder survived the mother to whom a life estate was given by the will; that fact, instead of weakening, increases the weight of the authority in Bowling vs Dobyns. But there is a slight difference in the two wills. By Jackson’s will, if either of his daughters should die before the division which is directed to take place at the mother’s death, the children of the one so dying shall take their mother’s share. If Mrs. Súblett had died before the division, although an estate was vested in her, it would by her death have been divested, and would have passed to her children, instead of remaining in her husband. That contingency does not affect the case.
“A devise over upon a contingency has not the effect of preventing the shares of legatees from vesting in the meantime provided the words of bequest be, in other respects, sufficient to pass a present interest. (1 Roper on Legacies, 403.) Hence if a legacy be given to A to be paid at twenty-one, and if A die before that time then to B, the legacy will vest in A at the death of the testator, subject to be divested in the event of his dying under twenty-one: (Ibid, 403.) In this and such cases, the legacy vests immediately, sub modo, i. e., subject to be divested upon the happening of the contingency, upon which it is given over:” (Ibid, 404.) We deem it it to be unecessary to extend this opinion by reference to other authorities. It seems to us to be very 'dear that by the will of John Jackson., deceased, •his four daughters, of whom Mrs. Subtlett was one, took a vested fee simple interest as tenants in common ■in the slaves immediately on the death of the testator.
It has been adjudged that a vested remainder in slaves *473 accruing to a feme covert vests in her husband, so that if he survive the wife and the particular estate expire in his lifetime, he may bring a suit in bis own name to recover them without administering on the estate of his wife: (6 Litt. 335; 7 Mon. 216.) The husband has acquired possession, and his legal title is thereby .full and complete. From this view, .it results that the slave being the property of Sublett, was at law liable to be levied on and sold by execution against him.
A vested remainder in slaves accruing to a feme covert, vests in the husband, and if the particular estate determine in his lifetime, he may sue if he survive the wife, without administering on her estate: (6 ¿{if. 335; 7 Mon. 216.)
Wilkins for plaintiff; Temple and Owens for defendants.
This is not a case where the creditor is seeking the aid of a Chancellor to subject to his demands against an insolvent or .improvident debtor, property which accrued to the debtor through his wife, nor is the bill framed to meet such a state of case. In this case the wife comes into Court asking the Chancellor to prevent the creditor from exercising his .legal remedies against the husband, solely .because of her supposed separate and exclusive interest in the property. Having come to the conclusion that she has no such separate right in the slave Daniel, it follows that the decree of .the Circuit Court is erronoeus.
It is, therefore, reversed and the cause .remanded to that Court with directions to dismiss the complainant’s bill.