ORLANDO ELLSWORTH, Plaintiff in Error,

*vs.*

ORLANDO S. HINDS, RUSSELL B. HINDS, NELSON HINDS, CHESTER BARRETT and LAVANDA M. BARRETT, Defendants in Error.

CERTIORARI TO MILWAUKEE CIRCUIT COURT.

The right of the husband to the personal property of the wife, is fixed by law at the time of the marriage.

*Semble*, the husband has the right to administer upon the estate of his deceased wife, and at common law was entitled to the residue of her personal estate.

Whether such right is barred by our statute of distribution, *quere?*

If the personalty of the wife become the property of the husband during coverture, the court will not infer a relinquishment of such right from the fact of his administering upon her estate, and setting up a claim to the residue as administrator.

Where the wife held an estate of dower in the lands of a former husband, and sold and converted the same into money during coverture: Held, that such money became the property of the husband.

ALMIRA ELLSWORTH, late of the county of Milwaukee, wife of Orlando Ellsworth, died on the fifteenth day of June, one thousand eight hundred and fifty-four, intestate, leaving about $650 in bonds and mortgages, which were invested in her own name. Her husband, Orlando Ellsworth, applied for and obtained letters of administration on her estate.

The facts as proved and admitted, were as follows:

Orlando and Almira Ellsworth were married on the 2d day of November, 1841. At the time of their marriage, Almira possessed some personal property, and a right of dower in some lands in New York, which belonged to the estate of a former husband. In 1852, the wife, with the consent of the husband, sold her dower interest above mentioned, and received and loaned out on mortgage on real estate, in her own name, the proceeds of such sale; and the amount so loaned was outstanding and due, and to become due, in her own name, at the time of her decease.

The deceased left five children, her surviving, viz: Orlando Hinds, Nelson Hinds, Russell Hinds and Lavanda M. Barrett, wife of Chester Barrett, and one by her last husband, viz: Eugene Ellsworth.

On the rendition of the final account of Orlando Ellsworth, it appeared that there remained in the hands of the administrator, after payment of the debts, &c., of the deceased, the sum of $425.78 in cash, and a note and mortgage executed by Giles M. Packard, in favor of deceased, for $300, which whole amount was claimed by Orlando Ellsworth, the husband of the deceased. On the other hand, the children of the deceased, by a former husband, Orlando S. Hinds, Russell B. Hinds, Nelson Hinds and Lavanda Barrett, the defendants in error, claim four-fifths of the residue in the hands of the plaintiff in error, as administrator upon the estate of Almira Ellsworth, deceased.

The cause came on for hearing upon the settlement of the final account of the plaintiff in error, as the administrator of the estate of the deceased, and after argument of counsel for both parties, the following order and decree of the judge of probate was made on the 21st day of November, A. D. 1855:

" *In the matter of the distribution of the personal property of Almira Ellsworth, deceased.*—The accounts of Orlando Ellsworth, administrator of all and singular the goods, chattels, rights, credits and estate of Almira Ellsworth, late of Milwaukee county, deceased, having been finally settled and allowed, by which it appears that there remains in his hands, after the payment of the debts of the said deceased, and the necessary expenses of administration, the sum of four hundred and sixteen dollars and thirty-two cents (416.32) in money, and also a mortgage and notes executed by Giles M. Packard and wife in favor of said deceased, for the sum of three hundred dollars, dated on the 22d day of September, A. D. 1852. And it also appearing to this court that the said administrator was the husband of the said deceased, and as such husband is entitled to the exclusive enjoyment of the residue of the personal effects of the said deceased—It is ordered and decreed that the said Orlando Ellsworth, administrator as aforesaid, be allowed to re-

tain in his hands, for his own sole use and benefit, the said residue of the said personal estate of the said intestate.

"By the court."

Thereupon notice of appeal was filed by the children of the said deceased by her first husband, assigning the following, among others, as the reasons for such appeal:

1st. Because it allows Orlando to retain for his sole use and benefit the choses in action of Almira Ellsworth deceased, not reduced to his possession during coverture.

2d. Because the children of Almira Ellsworth, deceased, as her next of kin, are entitled in equal portions to the property awarded by said order to Orlando Ellsworth, it being at the time of her decease her sole and separate property, as if she were a single female.

3d. Because Orlando Ellsworth, surviving husband of Almira Ellsworth, deceased, was not entitled in preference to the next of kin, to administer upon the personal effects of the said deceased.

The appeal was heard in the Circuit Court, and after argument, at the April special term, 1856, the court made the following decree:

"On reading and filing proof of notice and appeal, and the reasons therefor, and certified copy of the record and proceedings appealed from, in this court, together with evidence of the filing of the requisite bond, and on hearing of Yates & Fraser, of counsel for appellants, and of Messrs. Palmer & Von Deutsch, of counsel for appellee, and on motion of counsel for appellants, it is hereby ordered, adjudged and decreed, that the order and decree of the judge of probate rendered in this cause be, and the same is hereby reversed and annulled, with costs; and on motion, it is further ordered, adjudged and decreed by the said court now here, that the said sum of $416.32 (four hundred and sixteen dollars and thirty-two cents), with interest thereon, at seven per centum per annum since his receipt of the same, money remaining in the hands of said appellee, as administrator of Almira Ellsworth, deceased, after payment of the debts of the said deceased, and the necessary expenses of administration, and also a

certain mortgage and note, executed by Giles M. Packard and wife, payable to said deceased for the sum of $300 (three hundred dollars), dated on the 22d day of September, A. D. 1852, now in the hands of said administrator, to be distributed and paid by him to Orlando S. Hinds, Lavanda Hinds, Nelson Hinds, Russell Hinds and Eugene Ellsworth, in equal shares, the agent or attorney, parent or guardian, or other person lawfully entitled to receive the respective share or shares of the persons above mentioned, together with the costs of this appeal.

" And it is further ordered, that a certified copy of this order and decree be served upon the judge of probate of said county, who is hereby required to enter the same of record.—April 28, 1856.

" By the court, &c."

To reverse which order of the said Circuit Court, the present writ of certiorari is sued out.

*G. Von Deutsch*, for the plaintiff in error.

Orlando Ellsworth, surviving husband of Almira Ellsworth, deceased, is entitled to the exclusive enjoyment of the residue of the personal estate of the said Almira Ellsworth, now in his hands as her administrator.

1. By virtue of the common law right of the administrator to retain and enjoy the residue of the estate administered upon :

1st. The surviving husband, at common law, is entitled to be administrator upon his deceased wife's personal estate. 1 *Williams on Executors*, 331 & 336; *Comyn's Dig. Adm. B* 6; *Watts vs. Watts*, 3 *Vesey*, 247.

2d. At common law, the administrator has the right to retain and enjoy exclusively the residue of the estate administered upon. *Bacon's Abridgement, Executors H* 1, 502, 503, 504; *Edwards vs. Freeman*, 2 *P. Williams*, 441 ; *Carter vs. Crowley, Lord Raym.* 500 ; *Co. Litt.* 351 *a*, note 1; 2 *Williams on Executors*, 1275 ; *Proudley vs. Fielder*, 2 *Myl. & Keen*, 57 ; 1 *Williams on Ex.* 336 ; *Ferguson vs. Hopkins*, 4 *M. & G.* 389.

The right of the husband as administrator of his wife's personal estate to the exclusive enjoyment of the residue, was not

impaired or changed by the statute of distributions, 29 *Chas. II,* chapter 3, § 25.

Taking it then to be the common law doctrine, that the surviving husband administering upon his deceased wife's personal estate is entitled to the exclusive enjoyment of the residue of such estate; it is further contended, that the same doctrine is still applicable to the case at bar, our statutes not providing for the case of a husband surviving his wife and being administrator upon her estate; and that consequently the plaintiff in error is entitled to the residue now in his hands as the administrator of his deceased wife.

The plaintiff in error, Orlando Ellsworth, is entitled to the exclusive enjoyment of the residue of the personal estate of his deceased wife, now in his hands as adminstrator.

2. By virtue and in consequence of the right he acquired to the personal estate of his wife by the marriage contract.

1st. The surviving husband is entitled by the marriage contract to all the personal property of the wife, whether reduced into his possession during coverture or not. *Shuttelsworth vs. Noyes,* 8 *Mass.* 229 ; *Fourth Ecclesiastical Society in Middleton vs. Mather,* 15 *Conn.* 587 ; *Savage vs. King,* 5 *Shepl.* 301; *Hitchcock vs. Beardsley, Cases Temp. Hardwick; Elliot vs. Collier,* 3 *Atkins Rep.* 527 ; *Betts, Adm. of Haselar, vs. Kempton,* 2 *B. & A.* 273 ; *S. C.,* 22 *Com. L. Rep.* 71; 1 *Williams on Executors,* 741 ; *Legg vs. Legg,* 8 *Mass.* 99–101; *Squib vs. Wyn,* 1 *P. Williams,* 381 ; *Burlow vs. Bishop,* 1 *East,* 432 ; *Commis vs. Munley et al.,* 12 *Pick.* 173; *Fitch vs. Ayer,* 2 *Conn.* 143–5; *Griswold vs. Penniman, id.* 564 ; *Cornwall vs. Hoyt,* 7 *Conn.* 426 ; *Beach vs. Norton,* 8 *Conn.* 71; *Whittsley vs. McMahon,* 10 *Conn.* 137 ; *Morgan vs. The Thames Bank,* 14 *Conn.* 99 ; *Whitaker vs. Whitaker,* 6 *John.* 112 ; *Westervelt vs. Gregg,* 2 *Kernan Rep.* 202.

2d. The husband is also entitled to the residue of the deceased wife's personal estate, including choses in action, when he does not administer. *Cart. vs. Rees, cited in Squib vs. Wyn,* 1 *P. Williams,* 381 ; *Humphrey vs. Bullen,* 1 *Atk. Rep.* 458 ; *S. C.,* 11 *Viner's Abridgement,* 86 ; *Elliott vs. Collier,* 3 *Atk.* 525.

3. Where the husband, surviving his wife, takes out letters of administration, and as such administrator, sues for, and collects choses in action outstanding, in the name of his deceased wife, he is entitled to the residue of such personal estate, either as administrator or *jure mariti*. *Jones vs. Warren*, 4. *Dana*, 333.

The husband by taking out letters of administration, does not abandon his marital rights to the property of his deceased wife, but only employs the proper means of possessing himself of what the law gives to him.

4. The right of the husband to the choses in action of his wife, not reduced to possession by him, terminates only with his life, and if he permits his wife to retain possession of her choses in action during her life, he being the surviving party, does not thereby divest himself of his right to such choses in action vested in him by the marriage contract.

*Yates & Fraser*, for the defendants in error.

1. Under the laws of this state, the surviving husband acquires no right to, or interest in, the *choses in action* of his deceased wife, who dies intestate, unless the same are reduced to his possession during coverture—they do not survive to him by the rules of the common law. *Black. Com. Book* 2, 435 ; 2 *Kent's Com.* 135. If the husband neglects or fails to exercise the right to reduce such *choses in action* to possession during coverture, his right to do so is gone, unless by some statute of this state he be entitled to receive and enjoy the same for his own benefit, by acting as the administrator of her estate. The right of the husband, in this respect, is one derived from and secured by legislative enactment alone. In England, by the statute of distribution of 22 and 23 Charles II, and the statute of 29 Charles II, in explanation thereof, the husbands of *femes covert* who die intestate, have a right to administer upon their personal estate, and to receive and enjoy the same for their own benefit. This was a right given by statute. *Black. Com. Book* 2, 435 ; 2 *Kent's Com.* 135–136.

The same statute has, in substance, been re-enacted in New York (*N. Y. Rev. Stat. Vol. II*, 75 *a*, § 29), and in some of the

other states of the Union. But in this state there is no statute corresponding to the English and New York statutes on this subject, as above referred to. Our statutes provide that, after the payment of debts, &c., of the deceased, in cases of intestacy, the Probate Court shall, by a decree for that purpose, assign the residue of the estate, if any, to such other persons as are by law entitled to the same. *Rev. Stat. chap.* 72, § 2. In defining the persons thus entitled, the statute elsewhere provides in what manner the residue of the personal estate of any person dying intestate, shall be distributed. *Revised Stat. chap.* 68, § 1, *subd.* 6, *in connection with chap.* 63, § 1, *subd.* 1. These statutes point out the only manner of distribution of the personal estate, in such cases, known to or recognized by the laws of this state.

2. The facts disclosed by the testimony, that the dower interest was sold by the wife; that she loaned out the proceeds of the sale, taking the securities in her own name; in short, that she exercised exclusive control over her dower interest and the money arising on the sale thereof, all with the consent of her husband, and without objection on his part, are entirely inconsistent with the idea that the money received on the sale of dower or the securities taken for the same, was ever reduced to the husband's possession during coverture, or that, at any time during the lifetime of the deceased, he had or claimed any right thereto. 14 *Ohio Rep.* 100; 18 *id.* 113.

3. The dower interest was the property of Mrs. Ellsworth when the act of 1850, for the protection of married women in the enjoyment of their own property, was passed, her husband having omitted to reduce it to possession previous to the passage of that act. It therefore remained hers. *Laws of* 1850, *p.* 29, § 1; 1 *Harris Rep.* 480; 12 *Smedes & Marsh. Rep.* 432; 9 *New Hamp. Rep.* 321, *and cases there cited;* 2 *Brock. Rep.* 286; 15 *New Hamp.* 564; 11 *Missouri Rep.* 568. The husband's interest, if any, in the right of dower, was a mere naked authority to reduce the rents, issues and profits to possession, but until obtained by him he had no vested estate, or property in them. 5 *John Ch. Rep.* 209; 7 *Dana's Rep.* 183. The right of the husband to take the profits of the dower estate from the date of the

marriage to the time when the act of 1850, above referred to, took effect, may be conceded, as no question of that kind can properly be raised in this case; but we submit that the rents, issues and profits, or their equivalent, the proceeds of sale of the dower interest, was the sole and separate property of Mrs. Ellsworth, as if she were a single female. *Laws* 1850, *p.* 28, § 1.

4. Section one of the act to provide for the protection of married women in the enjoyment of their own property, approved Feb. 1, 1850, so far as the future rents, issues and profits of the dower estate are concerned, is not unconstitutional, as being in conflict with the provision of the federal or state constitutions, which prohibits the passage of any laws impairing the obligation of contracts. The relation of husband and wife does not come within the prohibition of these clauses of the constitution respecting contracts. *White vs. White,* 5 *Barbour,* 478. This is apparent from the fact that in most, if not all, of the states of this Union, laws have been passed, and are still in force, which wholly annuls the marriage relation. If the ceremony by which the relation of husband and wife is created, is a contract within the meaning of that clause of the constitution, then the laws of every state concerning divorces are null and void; and yet the power of the legislature of a state to pass laws wholly annulling the marriage relation, has never been questioned, but on the contrary, such laws have been adjudged constitutional and valid. *Starr vs. Reese,* 8 *Cowen Rep.* 541; 2 *Kent's Com.* 107. The powers of a state legislature are general, and courts cannot limit their authority to pass laws of whatever character, by exceptions which are not found in the constitution itself. *The Corporation of New York vs. Coates,* 7 *Cowen's Rep.* 585.

Prior to the passage of the act of 1850, the husband was, undoubtedly, entitled to the profits, if any, of the dower estate, in case the same were reduced to his possession, and thereby became vested in him; but in regard to the future avails of the dower estate, there was no vested interest in the husband, inasmuch as the same had not yet been reduced to his possession, and, therefore, no vested interest acquired by him. The interest of the husband in profits of the estate was a qualified right, upon condi-

tion that he reduced them to possession, during coverture. This condition is a condition precedent, and it was indispensable that the condition precedent should take place before the interest could vest. In this case the act of 1850 was passed before the condition was performed, and intercepted the right of the husband. Therefore, in respect to the money received by Mrs. Ellsworth, on the sale of her dower interest, with the consent of her husband that the same should be loaned out by her in her own name, it cannot justly be contended that the plaintiff in error acquired a vested interest. The money never became the property of the husband in any just sense, and therefore the act of 1850 did not interfere with or impair any vested interest or any right of property of the husband. But even conceding that it was a vested interest in the husband, which we deny, it was entirely competent for the legislature to enact such a law without a violation of the constitution, as the law would not impair the obligation of any contract contemplated by the framers of that instrument. *White vs. White*, 5 *Barbour*, 481 ; *Watson vs. Mercer*, 8 *Peters*, 88 ; *Blood vs. Humphrey*, 17 *Barbour*, 662.

5. The equity of the wife to the money arising from the sale of her dower interest, is worthy of consideration by the court, in the disposition of this case. It may well be inferred, from the nature of the interest in question, that the husband, by his acts and conduct in the premises, intended to renounce all his claim to the dower interest in favor of his wife, by the way of a gift or voluntary settlement, for the maintenance of herself and children by a former husband. Courts of equity regard such settlements with favor, and hold them valid and obligatory upon the husband, his representatives and creditors. *Story's Equity Jurisprudence*, §§ 1872, 1879 ; 10 *Ohio Rep.* 371 ; 14 *id.* 100 ; 20 *id.* 518 ; 9 *Paige*, 283 ; 7 *Price*, 646 ; 10 *Vesey*, 360 ; 1 *Atk.* 270 ; *Bright on Husband and Wife, Vol. I*, 32 ; 9 *Shepley*, 408.

The county judge sitting as a Court of Probate, has power to adjust equitable as well as legal claims. 5 *Paige Rep.* 135 ; 6 *id.* 520 ; 7 *id.* 115, 591 ; 4 *John Ch. Cases*, 410.

6. The proceedings in the Probate Court, from the granting of letters of administration, down to and including the order or de-

cree of the judge of probate, have no validity or binding force; on the supposition that the outstanding notes and mortgages were the property of the plaintiff in error. Admit that they belonged to him, and the proceedings in the Probate Court are a mere nullity, and would, for that cause alone, be reversed as a void decree. 6 *Wend.* 465. The plaintiff in error took upon himself the administration of an estate which did not belong to the deceased, and in which he had no interest, if the title thereto was in the husband. It would present the anomaly of a person assuming the duties of administration on his own property—a proceeding which, if valid in law, must be conceded to be entirely novel and unprecedented. The Probate Court treated the notes and mortgages as the personal effects of the deceased, and so describes them in the decree from which the appeal was taken to the Circuit Court. The decree of the Probate Court is founded on two facts, which are therein stated to appear to the court:—1st. That there remained in the hands of the administrator, after payment of debts, &c., a certain sum of money and a certain mortgage and notes in favor of the deceased ; and 2d. That the administrator was the husband of the deceased, and as such husband entitled to the exclusive enjoyment of the residue of the *personal estate of the deceased.* Now, if the notes and mortgages were the property of the administrator, then the decree and all the proceedings of administration are void and of no effect; but if they were the property of the deceased in her lifetime, *and her personal effects,* as stated in the decree and contended by defendants in error, the residue of the personal effects of the deceased should, under our statutes, be distributed in equal portions to the children, and so assigned to them by the order of the court. *Rev. Stat. ch.* 92, § 2 ; *id. ch.* 68, § 1, *subd.* 6 ; *id. ch.* 63, § 1, *subd.* 1.

Objections which might have been obviated by evidence will not be considered on a review, where they were not made at the trial. 2 *Kernan,* 81.

So far from its having been claimed on the hearing before the judge of probate, that there was no evidence that the money and mortgage was the *sole and separate property* of the wife at the time of her decease, or that it was always the money and effects

of the husband, his own sworn statement, upon which the order for distribution was predicated, fully conceded that she was the *meritorious cause*—that "she had property at the time of our marriage. It consisted of some personal property and a right of dower in some lands.   *   *   *   *   *She* sold her dower interest in the lands, after the marriage. It was in 1852. The whole amount *she* received was $650, which amount ($650) *she* loaned out on real estate *in her own name.* . This amount standing out due and to become due *to her in her own name at the time of her decease.* She left, her surviving five children, four by a former husband, viz." &c.

The order or decree for distribution likewise concedes the *fact* of the sole and separate property of the wife, the husband styling himself "administrator of all and singular the goods, chattels, rights, credits and estate of *Almira Ellsworth,* late of Milwaukee county, *deceased,*" and the decree then proceeds to give it to him, not as a *restitution* of his own property. *before her decease,* but as husband and administrator "entitled to the *exclusive enjoyment* of the *residue* of the *effects* of said *deceased.*"

It will not, therefore, now do to set up a new claim to this money ; as that it was his money, as husband, in her lifetime, in virtue of the marriage relation ; and that his taking out letters and administering upon it, was a nullity, &c. Having conceded the proceeds of her dower interest to be her sole and separate property, and used and invested accordingly during her whole lifetime, and subsequently administered upon and made return of his proceedings as "administrator of all and singular the goods, chattels, rights, credits and estate of" his wife—this money and mortgage being the sole assets—it seems to us that he is now estopped from disputing or repudiating his trust character, or from claiming it now, for the first time, upon an anterior and distinct ground, in opposition to her children and to their prejudice and in contempt and derision of all his previous acts and conduct in the premises. *Fulkinson's Ex'rs,* 14 *Ohio Rep.* 100 ; *and particularly Wood vs. Warden,* 20 *Ohio Rep.* 518.

*By the Court,* SMITH, J. This case was brought to this court by certiorari, from the Circuit Court of Milwaukee county.

Almira Ellsworth, wife of Orlando Ellsworth, died on the 15th day of June, A. D. 1854, intestate, leaving about $650 in bonds and mortgages, which had been invested in her own name. Her husband, Orlando Ellsworth, applied for and obtained letters of administration on her estate.

Orlando and Almira Ellsworth were married on the 2d day of November, 1841. At the time of their marriage Almira possessed some personal property, and a right of dower in some lands in New York, which belonged to the estate of a former husband. In 1852, the wife, with the consent of her husband, sold her dower interest above mentioned, and received the proceeds thereof in money. This money was loaned out with the consent of the husband and security taken by bond and mortgage on real estate in the name of the wife; which amount was outstanding, due, and to become due at the time of her decease.

The deceased left five children surviving, viz : Orlando Hinds, Nelson Hinds, Russell Hinds, and Lavanda M. Barrett, wife of Chester Barrett, by her first husband, and Eugene Ellsworth the issue of the last marriage.

On the rendition of the final account of Orlando Ellsworth, as administrator, after payment of the debts, &c., of the deceased, there remained the sum of $425.78 in money, and a note and mortgage in favor of the deceased for $300, all of which was claimed by Orlando Ellsworth, the husband of the deceased. The four children of the deceased, by the first husband, claimed four-fifths of this amount so remaining in the hands of the plaintiff in error, as administrator.

The cause came on for hearing upon the settlement of the final account of the plaintiff in error, as the administrator of the deceased, and after argument of counsel the Court of Probate passed the following order :

" The accounts of Orlando Ellsworth, administrator of all and singular the goods, chattels, rights, credits and estate of Almira Ellsworth, late of Milwaukee county, deceased, having been

finally settled and allowed, by which it appears that there remains in his hands, after the payment of the debts of the said deceased, and the necessary expenses of administration, the sum of four hundred and sixteen dollars and thirty-two cents ($416.32) in money, and also a mortgage and notes executed by Giles M. Packard and wife, in favor of said deceased, for the sum of three hundred dollars, dated on the 22d day of September, A. D. 1852. And it also appearing to this court that the said administrator was the husband of the said deceased, and as such husband is entitled to the exclusive enjoyment of the residue of the personal effects of the said deceased; it is ordered and decreed that the said Orlando Ellsworth, administrator as aforesaid, be allowed to retain in his hands, for his own sole use and benefit, the said residue of the said personal estate of the said intestate."

Thereupon, the children of the deceased, by the first marriage, appealed to the Circuit Court, specifying the following as the reasons for such appeal:

1. Because the decree or order of the judge of probate allows Orlando Ellsworth to retain for his sole use and benefit the choses in action of Almira Ellsworth, deceased, not reduced to his possession during coverture.

2. Because the children of Almira Ellsworth, deceased, as her next of kin, are entitled in equal portions, to the property awarded by said order to Orlando Ellsworth, it being at the time of her decease, her sole and separate property, as if she were a single female.

3. Because Orlando Ellsworth, surviving husband of Almira Ellsworth, deceased, was not entitled in preference to the next of kin, to administer upon the personal estate of the deceased.

This appeal was brought to a hearing in the Circuit Court, and on the 25th of April, 1856, a decree was rendered, reversing the decree of the Court of Probate, and ordering distribution of the proceeds of the estate in equal proportions among the five children of the deceased.

To reverse this decree this writ of *certiorari* is prosecuted.

It would seem to be the better opinion that the husband had the right at common law to administer upon the estate of his

deceased wife (*Williams on Executors*, 331; *Com. Dig. Adm. B.* 6; *Watts vs. Watts*, 3 *Ves.* 247); and as administrator to retain and enjoy the remainder or residue of the personal estate after payment of the debts and expenses of administration, until the act of distribution; 29 *Charles II.* Subsequently to that act, the administrator was required to account for and distribute the residue of the estate. But in that act an exception was made of the case of a husband administering upon the estate of his deceased wife. In such case the common law right of the administrator to retain the residue was left unimpaired by the statute.

But however this may be, we think the plaintiff in error was entitled by his marriage contract to the personal property of the wife. When her dower estate was sold and converted into money it became, as the law then stood, the property of the husband, and vested in him. Nor have we been able to discover by what means he has become divested of his right thereto, unless it may be inferred from the fact that he loaned out the money and took the securities in the wife's name, thereby indicating an intention on his part to give up to his wife all the rights which he had acquired by the marriage. But we do not think this fact of itself sufficient to justify such a conclusion. If the property was his by virtue of the marriage contract, and vested in him on its conversion into money, his title is not at all impaired by his acting as administrator. The fact that he contends that he would have a right to claim this estate as administrator, even if his title as husband should be adjudged invalid, does not in the least tend to invalidate the latter title. We do not think there is evidence to warrant us in concluding that he ever intended to relinquish any of the rights which accrued to him by the marriage, nor can we hold that he forfeited those rights by taking upon him the administration of the estate. Therefore we are of opinion that the judgment of the Circuit Court should be reversed, and the judgment and decree of the County Court should be affirmed.

Judgment accordingly.