McLIMANS, Respondent, vs. THE CITY OF LANCASTER, Appellant.

*May 2 — September 22, 1885.*

PARTIES. *(1) Married woman: Personal injury.*
EVIDENCE. *(2) Affidavit of prejudice of judge. (3) Loss of business. (4) Champertous agreement. (5) Hearsay: Information through newspapers.*
INSTRUCTIONS TO JURY. *(7, 8) Diligence in repairing sidewalk.*
VERDICT: DAMAGES. *(5) Form of special verdict, (9) and of answers. (10) Damages held excessive.*
COSTS. *(11) Allowance for printing brief in supreme court.*

1. Under ch. 99, Laws of 1881, a married woman may maintain an action in her own name for an injury to her person, even though the action was commenced before the passage of that act, if objection was not made until after its passage.

2. Where in an action for personal injuries a change of venue has been had on plaintiff's application on the ground of prejudice of the judge, the plaintiff cannot be cross-examined at the trial as to the making of the affidavit of prejudice.

3. In an action by a married woman in her own name for personal injuries, in which damages for loss in her business are not recoverable, evidence on the part of the defendant to show that such loss was due to reasons other than the injury — as, that she kept a disorderly place — is inadmissible.

4. In an action for personal injuries it was not error to exclude a question put to the plaintiff on cross-examination: "Is there any arrangement between you and your counsel that they shall have a certain portion of what you recover?"

5. A witness cannot testify to information which he has received "through the newspapers" as to the suppression, by the public authorities, of a certain medical college.

6. The form of a special verdict is largely in the discretion of the trial court, and if the questions submitted cover all the controverted issues of fact, and are reasonably specific, this court will not interfere.

7. Upon the question whether the authorities of a city could, with reasonable diligence, have discovered and repaired a break in a plank sidewalk before an accident occurred, the jury may properly be instructed to consider the length of time the walk had been built,

the condition of the planks and stringers, the liability of the walk to get out of repair, the amount of travel upon it, and the number of walks the city had to supervise; and the court may show the bearing of these facts by illustration.

8. The sidewalk in question was but little used. The jury were instructed that "the greater amount of travel there is upon any street or sidewalk in any city, the greater is the care and watchfulness which the city and its officers must exercise in seeing that it is kept in a safe condition for the public use; *and perhaps the converse of the proposition may also be true.*" *Held,* that a judgment for the plaintiff would not be reversed merely because the converse of the proposition was not positively stated.

9. In a special verdict the question " Did the plaintiff know of the defect in the sidewalk . . . prior to the time of receiving her injury?" was answered "We have no proof that she did." *Held,* that the answer was sufficient as a negative answer.

10. A verdict, upon a second trial, for $8,000 for personal injuries caused by a defective sidewalk (the first verdict, rendered two years and eight months after the accident, having been for $2,000 only) is *held* excessive, and a new trial is ordered unless the plaintiff remit $3,000 therefrom.

11. The allowance for printing a brief which fails to conform to Rule IX, limited.

APPEAL from the Circuit Court for *Green* County.

The case is thus stated by Mr. Justice CASSODAY:

"This action was commenced December 13, 1880, to recover damages for personal injury happening to the plaintiff on the evening of July 7, 1879, by reason of a defective sidewalk on the north side of Dewey street, in the defendant city. The complaint was in the usual form in such cases. The answer admitted the incorporation of the city, the existence of the street, and the service, September 11, 1879, of the notice of the injury, the time and place of its occurrence, and the defect in the sidewalk, but denied each and every other allegation of the complaint. September 6, 1881, the venue was changed, on the ground of the prejudice of the circuit judge, from Grant to Green county, where the cause was tried, and a verdict of $2,000 rendered in favor of the plaintiff, March 16, 1882, which verdict was, on motion of

defendant, set aside by the circuit court for Green county, March 21, 1882, and an order entered accordingly, which order was affirmed by this court. 57 Wis. 297. On the cause being remanded, it was retried in March, 1884, and a special verdict rendered in favor of the plaintiff and against the defendant, to the following effect:

"(1) There was a broken plank in the sidewalk on the north side of Dewey street, in the city of Lancaster, in front of the Ward lot, on the evening of July 7, 1879, through which the plaintiff stepped on that evening and was thrown down and injured. (2) The broken plank had remained in that condition for three weeks prior to that time. (3) The city authorities, by the exercise of reasonable diligence, could have discovered and repaired the same after it was broken, and prior to the injury. (4) The plank where the plaintiff was injured was broken before July 4, 1879. (5) The city authorities, by the exercise of . reasonable diligence, could have discovered the broken place and repaired it, prior to the evening of July 7, 1879. (6) It was about sixty-nine feet east of the southwest corner of the Ward lot where the plaintiff fell and was injured on that evening, or near the second maple tree. (7) The plaintiff was in the exercise of ordinary care at the time she fell and was injured. (8) The sidewalk in question was not in the business part of the city, but was used by the public. (9) There was not a great deal of travel on it at and prior to the time of the alleged accident, except at times of using the fair ground. (10) We have no proof that the plaintiff knew of the defect in the sidewalk where she claims to have been injured, prior to the time of receiving her injury. (11) The plaintiff sustained damages, in consequence of the injuries she received at the time and place and on the occasion in question, to the amount of $8,000. (12) We, the jury, find for the plaintiff, and assess her damages at the sum of $8,000.

"Thereupon the defendant moved the court upon its

minutes to set aside the verdict, and for a new trial, by reason of the rulings made and exceptions taken, and because the verdict was contrary to the evidence, and the damages excessive. The motion was overruled, and, from the judgment entered upon the verdict, the defendant appeals."

[The plaintiff, at the time of the accident, kept a restaurant and bakery in the defendant city. At the trial, in excluding evidence offered by the defendant to show that a falling off in the plaintiff's business after the accident, and her subsequent failure therein, were due to the fact that she kept a disorderly house, and were not in any way the result of the injury, the court ruled that no damages on account of loss of business were recoverable in this action, and that the evidence offered was therefore irrelevant.]

*Clark & Mills*, for the appellant.

*A. R. Bushnell* and *W. E. Carter*, for the respondent.

The following opinion was filed June 1, 1885:

CASSODAY, J. Precluded by circumstances from hearing the oral arguments, I have the more thoroughly examined the printed case and the briefs of the respective counsel, and by so doing have been led to the same conclusions as the other members of the court who did have the pleasure of listening to such arguments.

1. It is urged that, as the plaintiff had a husband living at the time of the injury, and also when the action was commenced, and as both occurred prior to the enactment of ch. 99, Laws of 1881, the plaintiff cannot maintain this action in her own name alone. The contention is that, as the law then stood, the husband, as well as the wife, was a necessary party to the action, and might control it, and that the damages recoverable belonged to the husband, and not to the wife, and could in no sense be regarded as her separate property. In support of this contention, counsel cite

and rely upon *Shanahan v. Madison*, 57 Wis. 278–281.[1] Such, undoubtedly, is the doctrine of that case, and the cases there cited. Had the defendant in time raised the question of the defect of parties by the necessary plea in abatement, the plaintiff would have been compelled to amend her complaint by making her husband a party plaintiff with herself. But, no such plea having been · made, the objection of a defect of parties merely was thereby waived, and hence is no longer available. Sec. 2654, R. S.; *Hallam v. Stiles*, 61 Wis. 272.

Still, independent of the law of 1881, the question would recur whether the wife could maintain such action in her own name, when the right of action could not be regarded as her separate property, and the amount recoverable would have belonged to the husband alone. It has recently been held in England, in a similar case, that while such plea in abatement would have been available, the same would not have been available as a plea in bar. *Weldon v. Winslow*, L. R. 13 Q. B. Div. 786. "For such a cause of action," said BRETT, M. R., in that case, "no action could ever have been brought by the husband alone without joining his wife as a plaintiff. . . . The injury to the wife was the meritorious cause of action, and if she had died before the commencement of the action the husband would not have been entitled to sue. If damages should be given, they would belong, in the first place, to the wife alone, and if they should not be reduced into possession by the husband, and he should die, the damages would be hers, and would not go to his executors."

It is to be remembered that the right of action was and is purely statutory. Sec. 1339, R. S. No action would lie for such an injury at common law. *Stilling v. Thorp*, 54 Wis. 532. The right of action in this case, having been given by

McLimans vs. The City of Lancaster.

statute, might have been entirely taken away by statute, even after the action was commenced. *Dillon v. Linder*, 36 Wis. 344; *Rood v. C., M. & St. P. R. Co.* 43 Wis. 146; *State v. Stone*, 43 Wis. 481; *Smith v. C. & N. W. R. Co.* 43 Wis. 686. Under our statute neither the husband nor the husband and wife jointly could have assigned such a right of action. Sec. 4253, R. S. *Randall v. N. W. Tel. Co.* 54 Wis. 140; *Kusterer v. Beaver Dam*, 56 Wis. 477; *Lamont v. W. & G. R. Co.* 47 Am. Rep. 276. Such being the state of the law at the time ch. 99, Laws of 1881, was enacted, there would seem to be no constitutional prohibition against the legislature taking from the husband all right of participation in the right of action, and giving the same entirely to the wife, to be recovered in her name alone. This being so, and the meritorious cause of action having always been in the wife and never in the husband alone, it would seem that the effect of the statute was merely to take from the husband the former right of being made a party, and of control and subsequent acquisition and appropriation, and to clothe the wife with full capacity to commence, prosecute, and control the action in her own name alone, and to collect and appropriate to her own use any judgment that might be recovered. In other words, the act went to the remedy,— the capacity of the wife and the incapacity of the husband,— without in any way affecting the cause of action itself. True, this construction gives to the statute a retroactive effect, but only as to the remedy. Such a construction of a similar act was expressly sanctioned in *Weldon v. Winslow*, L. R. 13 Q. B. Div. 786. In that case the injury to the wife was prior to the passage of the act, but the action was not commenced until after the act went into effect, and it was held that by virtue of the act she could maintain the action in her own name alone.

It follows that although the plaintiff could not, as against the defendant's objection, have maintained the action in her

own name alone prior to ch. 99, Laws of 1881, yet that she could so maintain it after that enactment. These things being so, we think the objection comes too late,— especially as it is made in this court for the first time. The case is quite analogous to an action brought by an infant in his own name alone, and where no objection is made until after he becomes of age, when the objection is no longer available. *Hepp v. Huefner*, 61 Wis. 150, 151. The enactment in question became a law before the first trial. For the reasons given we must hold that the plaintiff had the requisite capacity to maintain the action in her own name alone at the time of the last trial.

2. The several exceptions taken to the exclusion of evidence seem to be without merit. The inquiry of the plaintiff, on her cross-examination, as to whether she made the oath or affidavit of prejudice for the change of venue, was upon a matter entirely collateral and foreign to the issue on trial, and hence was properly excluded. The same is true with respect to the inquiry of her, on cross-examination, as to whether the title to the house was in her or her husband. Besides, it was not proper cross-examination, and she afterwards was permitted to be thus examined. The same is true with regard to having dances and selling whisky in the house, and its being disorderly.

The court excluded this question put to the plaintiff on her cross-examination: "Is there any arrangement between you and your counsel that they shall have a certain portion of what you recover against the city?" Had the plaintiff answered the question in the affirmative, it would not have disclosed a champertous agreement within the rule established by this court. *Ryan v. Martin*, 16 Wis. 57; *Allard v. Lamirande*, 29 Wis. 502. Besides, in an action like this, such agreement, if made, would not have been binding. *Kusterer v. Beaver Dam*, 56 Wis. 475; *Lamont v. W. & G. R. Co.* 47 Am. Rep. 276; *Miller v. Newell*, 47 Am. Rep. 833;

20 S. C. 123.   Clearly the court was'right in holding that
the testimony sought to be elicited by the, question was im-
material.   So the trial court was justified in striking out
that portion of the testimony of a medical witness in which
he stated what information he had received "through the
newspapers" as to the suppression "by the public authori-
ties" of a medical college named.   We find no error in the
admission or exclusion of testimony.

3. Exceptions were taken because the court did not sub-
mit to the jury certain additional questions.   One of these
was as to whether the accident occurred where a board in
the sidewalk was gone, or where a board was broken and
the pieces remained; and another was as to whether there
was any other defect, such as a missing plank, or broken
plank, on the sidewalk south of the Ward lot on July 7,
1879, except the broken plank where the plaintiff claimed
to have fallen.   The court had already submitted to the jury
the question as to the presence of a broken plank at the
time and place of the injury.   It is difficult to perceive how
an answer to either of those additional questions would have
tended to throw any additional light upon the real question
in controversy, which was whether the plaintiff, without
her fault, had, at the time and place in question, been in-
jured by reason of a defect in the sidewalk.   If she was so
injured, without any negligence on her part, then the de-
fendant was liable, regardless of whether the defect was in
consequence of the absence of a board altogether, or its
being broken and the pieces remaining, or the presence of
some other defect in some other portion of the sidewalk.
Certainly the refusal to submit such additional questions
was justifiable.   *Cummings v. Nat. Furnace Co.* 60 Wis.
614.   Such facts may have been important as matters of
evidence and as tending to credit or discredit the statements
of certain witnesses.   But'it is the province of a special ver-
dict to determine issuable facts, and not to present frag-

ments or a mere abstract of the evidence. *Eberhardt v. Sanger*, 51 Wis. 76, 77. The form of a special verdict is largely in the discretion of the trial court, and if the questions submitted cover all the controverted issues of fact, and are reasonably specific, this court will not interfere. *Hoppe v. C., M. & St. P. R. Co.* 61 Wis. 358.

The other additional questions which the defendant requested the court to submit to the jury were either in effect submitted, or such as called for findings as to certain fragments of evidence, or were upon questions which were not issuable facts, or were objectionable within some of the principles stated, or were at least within the discretion of the trial judge to submit or withhold. We are constrained to hold that the questions submitted covered all the issuable facts.

4. Exceptions were taken to certain portions of the charge to the jury. On the question as to whether the defendant could, by the exercise of reasonable diligence, have discovered and repaired the broken place in the walk after it was broken and before the injury, the jury were told that they ought to take into account the length of time the walk had been built, the condition of the plank and stringers, the liability of the walk to get out of repair, the amount of travel upon it, its use by citizens, and the number of walks the city had to supervise. The court enlarged upon the subject in the general charge, and in a more general way illustrated how the defendant would be free from negligence if a walk became out of repair suddenly and from ulterior causes; but otherwise if suffered to get out of repair by long neglect and general decay. Finally, these remarks were all qualified by the following: "I don't speak of this because I assume that such facts are shown in this case, but I mention it by way of illustration bearing on the question of due diligence on the part of the city." And again the court said to the jury: "Whether there was any such defect or defects

in the sidewalk, and the length of time it or they had existed, and whether the city authorities could with reasonable diligence have ascertained and remedied such defect or defects, are questions of fact for you to decide from the evidence given on the trial of the case." Certainly the facts mentioned and in evidence were proper for the jury to consider in determining the question suggested, and we perceive no error in calling their attention to them in the way indicated.

On the same subject, and in another portion of the charge, the jury were told that it was very proper for them to take into consideration the location of the street in question in respect to other streets and walks in the city, and the general amount of travel upon the same, and if this travel varied at any particular season of the year, or upon any particular occasion, then it was proper also for them to take that into consideration, and then added this clause: "For it is undoubtedly true that the greater amount of travel there is upon any street or sidewalk in any city, the greater is the care and watchfulness which the city and its officers must exercise in seeing that it is kept in a safe condition for the public use; *and perhaps the converse of the proposition may also be true.*" Exception is taken only to the words in italics. These words add nothing to the force of the proposition. The whole tenor of this portion of the charge, under the evidence, was to make the case more favorable to the defendant.

The evidence tended to show, and the jury found, that the sidewalk in question was not in the business part of the city, and that there was not a great deal of travel on it at and prior to the time of the alleged accident, except at times of using the fair ground. There is no evidence that the fair ground was being used at the time in question, and the presumptions are against its use at that time. The jury were considering the requisite care of a

sidewalk not in the business portion of the city and but little used at the time; and in reference to that sidewalk were told, in effect, that the greater amount of travel there is upon any sidewalk, the greater is the care and watchfulness which the city and its officers must exercise in seeing that it is kept in a safe condition for the public use. This discrimination between the requisite care in sidewalks used much, and those used but little, like the one in question, was necessarily to the advantage of the defendant; and the only complaint is that it was not duplicated by positively putting the converse of the proposition. We cannot reverse the judgment upon such a ground.

In presenting the question whether the plank where the plaintiff was injured was broken before July 4, 1879, the court said to the jury: "That involves the question, probably, whether it was fifty-one feet from the southwest corner of the Ward lot, or whether it was about sixty-nine feet, in the neighborhood of the second maple tree spoken of by the witnesses. You will consider this question carefully, and try to remember and recall the evidence bearing upon it." In presenting the question as to about how many feet it was east of the southwest corner of the Ward lot to the place where the plaintiff fell and was injured at the time in question, the court said to the jury: "The plaintiff's testimony tends to show that it was about sixty-nine feet; the defendant's tends to show it was about fifty-one feet. You will weigh all the evidence on this question, and follow your convictions after a careful and thorough consideration of it."

The defendant's counsel concede that the plaintiff fell about sixty-nine feet east of the southwest corner of the Ward lot, but deny that there was any broken board at the time and at the place where the plaintiff fell. They also claim that there was a hole in the walk fifty-one feet east of the southwest corner of the Ward lot. The court took

none of the facts from the jury, but left to them entirely the particular point in the walk as to where the injury occurred, and also as to whether there was a broken board or plank at the place of the injury. The difficulty with the defendant's theory does not grow out of the remarks of the judge in submitting the questions to the jury, but in the answers given by the jury.

On the subject of the plaintiff's alleged contributory negligence the charge was full and complete, and no exception seems to have been taken to it. The charge is quite lengthy, and covers all phases of the case. The court also gave ten special instructions at the request of the defendant, and three at the request of the plaintiff, to which no exception was taken. It is hardly necessary to add that there was no violation of any rule of law in refusing to give to the jury any of the other fourteen instructions requested. Nor do we feel called upon to go over these rejected instructions in detail. Most of them were covered in one form or another by what was given to the jury. Some of them were clearly improper. Others were objectionable as assuming facts to exist which were really for the jury to determine. Others still were objectionable as asking a specific instruction as to the effect of some isolated collateral fact which was at most circumstantial. *Eberhardt v. Sanger*, 51 Wis. 78; *Bouck v. Enos*, 61 Wis. 664. The law of negligence and contributory negligence in such cases is so well settled in this state that he who runs may read. This being so, it is hardly necessary to add another to the numerous chapters of repetition.

5. One of the questions submitted to the jury was this: "Did the plaintiff know of the defect in the sidewalk where she claims to have been injured, prior to the time of receiving her injury? *Answer*. We have no proof that she did." Exception is taken on the ground that this answer was insufficient. The plaintiff was certainly not required to dis-

prove contributory negligence on her part. If she was guilty of such negligence, the burden of proving it was upon the defendant. *Kelly v. C. & N. W. R. Co.* 60 Wis. 482; *Hoth v. Peters*, 55 Wis. 405. This being so, the finding of an absence of proof was equivalent to answering the question in the negative. Besides, had she previously known of the defect, it would not have been conclusive upon her that she was guilty of contributory negligence. *Wheeler v. Westport*, 30 Wis. 393; *Barstow v. Berlin*, 34 Wis. 357.

6. The question whether the plaintiff was, under the evidence, guilty of contributory negligence, was one of fact for the jury and not of law for the court. *Hoye v. C. & N. W. R. Co.* 62 Wis. 666; *Kaples v. Orth*, 61 Wis. 531. There is evidence to sustain the verdict in this regard. *Ibid.* So there is evidence tending to prove that the plaintiff was injured by reason of a defect in the sidewalk at the time and place stated in the verdict. We must therefore hold that the verdict was not contrary to the evidence.

7. The result is that we are unable to find in the record any such material error as would justify this court in reversing the judgment, unless it be the refusal to set aside the verdict for excessive damages. On the first trial, which occurred more than two years and eight months after the injury, the damages were only assessed at $2,000. On the last trial, two years later, the jury assessed the damages at $8,000. What had occurred, during the intervening two years, that would justify the quadrupling of the former verdict? There is some evidence tending to show that the effects of the injury had become more aggravated, but the increase of damages seems to be very much out of proportion to the progress of the aggravation. Besides, the opinions of the medical witnesses seem to be based, in part at least, upon the assumed truthfulness of the statements, assertions, and complaints of the plaintiff herself. The jury evidently be-

lieved her statements; and yet it is true that she sweepingly, and without qualification, contradicted a large number of witnesses in the course of the trial. It is at least extraordinary that an injury below the knee, and the wrench incident to such a fall, should not sufficiently develop itself in two years and eight months to enable medical experts to then testify fully as to the extent and permanency of such injury. Besides, there is evidence tending to show that the pains existing at the time of the last trial might possibly have been traceable to other causes independent of the injury. Of course that was a question of fact for the jury. Still there are some things in the record which indicate that the jury may have been misled or biased by undue sympathy for the plaintiff, and thus induced to do great injury to the defendant. At all events, courts do not feel bound to sustain verdicts which are clearly excessive, merely because there is some evidence to sustain them, with the same rigidity that they would a verdict upon other questions.

The exercise of the power of setting aside verdicts in such cases may be regarded as an arbitrary power, but it is nevertheless at times necessarily essential to the due administration of justice. The right to exercise such power in a proper case seems to be almost universally recognized. This court has recently sanctioned as salutary the right of the trial court, in actions of tort, to allow the successful party to remit a portion of the verdict, instead of being subjected to a new trial (*Corcoran v. Harran*, 55 Wis. 121), and also by this court allowing such party to so remit on reversal, and thus save a new trial. *Baker v. Madison*, 62 Wis. 137. That case was reversed mainly on the ground that the last verdict was double the first and more than double the second. In the present case the difference in the verdicts is far greater. All the members of this court are dissatisfied with it. Besides, since the last trial of this case, ch. 454, Laws

of 1885, amending sec. 1339, R. S., has been enacted, so that "the amount recovered by any person for such damage or injury shall in no case exceed the sum of five thousand dollars." Of course this act is prospective, and does not, in terms, apply to this case,— certainly not in the absence of intervening error working a reversal and a retrial; but it is a legislative declaration as to the limit of damages in a case, as already observed, where the right of action is given wholly by statute. As such, it is entitled to deference from this court, though not strictly applicable. Out of such deference, this court has gone so far as to change its construction of a former statute. *Webster v. Moe,* 35 Wis. 78, 79. We must therefore hold that the damages assessed by the jury in this case were clearly excessive, and that, since a reversal must be had, the plaintiff cannot be allowed damages in excess of $5,000.

But on such reversal the defendant's costs must be somewhat restricted. The original printed brief is altogether too voluminous, and fails to comply with the rules of this court. It contains no assignment of errors. Rule IX. It does not begin with a succinct statement of so much of the record as is essential to the questions discussed in it. *Ibid.* Such "succinct statement" does not mean a reprint of the whole record, nor any considerable portion of it. It simply means a concise statement of what is claimed to be the substance or gist or pith of the record, with references to the printed case for verification in case of any dispute. *Haseltine v. Mosher,* 51 Wis. 449; *Richards v. Waupun,* 59 Wis. 47; *Baker v. Madison,* 62 Wis. 137. The brief in question is so general, diffusive, and discursive in its make-up and import, as to be of very little service in searching out or determining the legal questions involved. Under the rule cited we would be justified in refusing any costs for the printing of it. The appellant's brief, in reply, has partially supplied the defects. We have concluded to allow the ap-

McLimans vs. The City of Lancaster.

pellant for printing seventy-five pages of briefs in all, but no more.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions that if the plaintiff, within thirty days after filing the *remittitur* in that court, shall remit in writing from the verdict all damages awarded thereby except $5,000, and file such remission with the clerk of the trial court, then judgment shall be entered in her favor, on the verdict and such remission, for the sum of $5,000 and costs. Failing to so remit there must be a new trial.

Upon a motion for a rehearing it was urged, *inter alia*, on behalf of the appellant, that before the passage of ch. 99, Laws of 1881, the right of action for a personal injury to the wife belonged to the husband; that this was a vested right; and that the act could not operate retrospectively to take that right from him. *Gibson v. Gibson*, 43 Wis. 26, 27; *Beach v. Beach*, 2 Hill, 260; *Mann v. Marsh*, 35 Barb. 71; *Westervelt v. Gregg*, 12 N. Y. 207; *Shanahan v. Madison*, 57 Wis. 280; *Shaddock v. Clifton*, 22 id. 117; Sedgwick on Dam. 29; Cooley's Con. Lim. 361, *n; Dunn v. Sargent*, 101 Mass. 336; *Norris v. Beyea*, 13 N. Y. 274; *Gardner v. Hooper*, 3 Gray, 398; *Jackson's Adm'r v. Sublett*, 10 B. Mon. 467; *Metropolitan Bank v. Hitz*, 1 Mackay (D. C.), 111; *Ellsworth v. Hinds*, 5 Wis. 625–6.

For the respondent it was argued that the right of action was *nobody's property* until recovery and judgment. *Gibson v. Gibson*, 43 Wis. 33; *Shanahan v. Madison*, 57 id. 282.

The motion was denied September 22, 1885.