HINTON, Respondent, vs. CREAM CITY RAILROAD COMPANY, Appellant.

*February 4 — February 23, 1886.*

PRACTICE: EVIDENCE: INSTRUCTIONS TO JURY: REVERSAL OF JUDGMENT: DAMAGES. *(1, 2) Immaterial errors: Suppression of part of deposition. (3) Duty and practice of street-car drivers as to stopping on signal. (4, 5) Impeachment: Leading questions: Identity of person. (6) Improper remarks by counsel: New trial. (7) Newly discovered evidence: Discretion. (8) Repeating instructions already given. (9) Immaterial error in instruction as to negligence. (10, 11) Positive and negative testimony: Weight. (12) Excessive damages.*

1. An error in the exclusion of evidence becomes immaterial if the witness is afterwards allowed to testify fully upon the subject; and where a witness has fully answered a question it is not error to sustain an objection to a question calling for a repetition of the same testimony.

2. Where the suppression of part of a deposition is alleged as error, the court must determine from the rejected interrogatories alone whether or not it was error to suppress them; but having determined that it was error, it must look into the answers to determine whether such errors were prejudicial to the party complaining.

3. The *duty* of the driver of a street-car upon receiving a signal to stop in order to let a passenger get off, is a matter of law. His *practice* on such occasions is irrelevant to the issues in an action for injuries to a passenger alleged to have been caused by the driver's failure to stop the car a sufficient length of time.

4. When it is sought to impeach a witness by proving that he made contradictory statements as to the transaction involved, the impeaching witness may be asked, in the form of a leading question, if such witness did not make to him the statements claimed to have been made.

5. To lay the foundation for impeachment a witness was asked whether he did not, at a certain time and place, make a certain statement to one *E. B.* Simpson. He denied any recollection of having done so. One *Edward* Simpson was afterwards called, and testified that the witness made such statement to him at the time and place mentioned. It appeared that there was another man named *E. B.* Simpson living in the city, but it did not appear that the witness

sought to be impeached knew that there were two Simpsons. *Held*, that it was not error to allow *Edward* Simpson to testify as to the alleged statement.

6. Where counsel has made an improper statement in argument, but when interrupted by opposing counsel declared that there was no evidence in the case to sustain his statement, and that he only put it as a conjecture, it will not be presumed that the jury were prejudiced by such statement.

7. It is not an abuse of discretion to refuse to admit newly discovered evidence after the close of the arguments to the jury, where such evidence is merely cumulative.

8. A judgment will not be reversed for the refusal to give a proposed instruction or a part thereof, which, though a correct statement of the law, is fully covered by the instructions and charge given.

9. Where by a special verdict the jury find that an accident was caused by defendant's negligence, and that plaintiff was not guilty of any contributory negligence, the error, if any, in an instruction from which the jury might possibly have inferred that the plaintiff might recover even if guilty of contributory negligence, is immaterial.

10. The positive testimony of one credible witness to a fact is entitled to more weight than the testimony of several witnesses equally credible who testify negatively, or to collateral circumstances merely persuasive in their character from which a negative may be inferred.

11. A finding by the jury that the plaintiff rang the bell of a street-car to notify the driver to stop, before she attempted to get off, is *held* to have been warranted by her unsupported testimony that she did so, although several witnesses gave strong negative testimony tending to show that she did not.

12. A verdict for $5,000 damages, for personal injuries to a healthy, active woman, seventy years old, which permanently destroyed the use of one of her limbs, *held* not excessive.

APPEAL from the County Court of *Milwaukee* County. The action is to recover damages for personal injuries suffered by the plaintiff through the alleged negligence of the defendant company. The defendant owns and operates a street railroad in the city of Milwaukee, which extends along Farwell avenue, southwest to Ogden street, and thence west on a descending grade along the latter street across Marshall street, which extends north and south across Ogden street. On November 3, 1883, at about 7 o'clock in the

evening, the plaintiff entered a car of the defendant on Farwell avenue intending to leave it at Marshall street. The car was stopped at the crossing on the west side of Marshall street, at which point passengers entered it. As soon as it had done so the plaintiff started to leave the car, and just as she stepped upon the platform outside the back door the driver loosened the brake, preparatory to starting the team, and the car lurched forward, throwing her violently to the ground. The thigh bone of one of her limbs was fractured, and her knee was severely injured. The limb will undoubtedly be crippled during her life by reason of the injuries she there received. These are the injuries of which she complains.

The car was provided with two signal bells over the driver's stand, to which were attached straps extending over the seats in the car on either side, within easy reach of passengers. The means of ingress to and egress from the car was a single step in the rear of the car, three and one half feet long and eighteen inches wide, located eleven inches below the car floor and the same distance from the ground. There was a railing at the rear of the car on each side the door, but none at the rear of the step.

The testimony and the rulings of the court on the trial are stated in the opinion. The jury returned a special and general verdict, as follows:

"(1) Did the plaintiff ring the bell, shortly before the car reached Marshall street, with the purpose of alighting from the car? Yes. (2) Did the plaintiff ring the bell shortly after the car came to a halt at Marshall street? Yes. (3) Did the plaintiff, while the car was standing still, rise from her seat to leave the car, and proceed toward the rear door of the car? Yes. (4) Did the driver suddenly start the car on a down grade while the plaintiff was in the act of leaving the car, and before she had alighted therefrom? Yes. (5) Was the plaintiff violently thrown to the ground

by reason of the starting of the car, and did she sustain personal injuries by reason thereof? Yes. (6) Was the plaintiff while endeavoring to leave the car guilty of any negligence which contributed to produce the injury? No. (7) Was the defendant while starting such car while the plaintiff was endeavoring to alight therefrom, in the exercise of ordinary care and diligence? No. (8) Did the plaintiff ring the bell when the car was half way between Astor street and Marshall street? Yes. (9) Did the plaintiff remain seated at Marshall street, after the car stopped, before arising to leave, and before others got into the car? Yes. (10) Did the plaintiff have a reasonable time to leave the car at Marshall street before it started? No. (11) Did the driver stop the car at Marshall street so as to let passengers into the car? Yes. (12) Did the plaintiff ring the bell before attempting to leave the car? Yes. (13) Did the witnesses Kortsch and Zigourney attempt to restrain the plaintiff, by seizing her arms, from leaving the car, as testified? No. (14) Had the car then been already standing at Marshall street a time reasonably sufficient for her to leave it? No. (15) Was the car-driver guilty of any negligence which caused the injury to the plaintiff? Yes. (16) What damages has the plaintiff sustained by reason of the injury in question? $5,000. (17) Do you find for the plaintiff or for the defendant? For the plaintiff."

A motion on behalf of the defendant for a new trial was denied by the court, and judgment was entered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

*Winfield Smith*, for the appellant, argued, *inter alia*, that if a person attempts to alight from a street-car without notice to the person in charge and without his knowledge or his being negligent in not knowing, the company is not liable for injuries received through a fall occasioned by the accidental starting of the car during such attempt. *Nich-*

*ols v. Middlesex R. Co.* 106 Mass. 463. Where the driver refused to stop the car upon being asked by a child six and one half years old, that refusal was held not to justify the child in leaving the car at the platform while it is in motion. *Cram v. Met. R. Co.* 112 Mass. 38. Where the driver of a horse car stops for purposes other than the letting off of passengers, and starts forward without being aware that passengers are getting off, the company is not chargeable with negligence if any one is injured thereby. *Chicago W. Div. R. Co. v. Mills,* 91 Ill. 39. A new trial should have been granted on account of the remarks made by plaintiff's counsel in his argument to the jury. *Brown v. Swineford,* 44 Wis. 291–3; *Baker v. Madison,* 62 id. 146; *Comm. v. Scott,* 123 Mass. 239; *Long v. State,* 56 Ind. 182; *Coble v. Coble,* 79 N. C. 589; *Hatch v. State,* 8 Tex. App. 416; *Cleveland Paper Co. v. Banks,* 15 Neb. 20; *Rudolph v. Landwerlen,* 92 Ind. 34; *Chicago & A. R. Co. v. Bragonier,* 13 Bradw. 467; *Rickabus v. Gott,* 51 Mich. 227; *State v. Gutekunst,* 24 Kan. 252; *Earll v. People,* 99 Ill. 125; *Bedford v. Penny,* 25 N. W. Rep. 381; *McLain v. State,* 18 Neb. 154; *Hanawalt v. State,* 64 Wis. 84; *People v. Quick,* 25 N. W. Rep. 302. It does not cure the wrong that counsel admitted his statement to be unsustained by evidence. *Baker v. Madison,* 62 Wis. 147; *Long v. State,* 56 Ind. 182; *Hatch v. State,* 8 Tex. App. 416. The damages were excessive. *Baker v. Madison,* 62 Wis. 137; *Spicer v. C. & N. W. R. Co.* 29 id. 586; *Potter v. C. & N. W. R. Co.* 22 id. 619; *Marshall v. Heller,* 55 id. 395; *Knowlton v. Mil. City R. Co.* 59 id. 282; *Goodno v. Oshkosh,* 28 id. 303; *Houghkirk v. D. & H. Co.* 92 N. Y. 219; *McLean v. Board, etc.* 7 Vict. T. R. (Law), 239; Pierce on Railroads, 396.

For the respondent there was a brief by *Fish & Dodge,* and oral argument by *Mr. J. T. Fish.* To the point that the damages were not excessive, they cited *Berg v. C., M.*

*& St. P. R. Co.* 50 Wis. 419; *Cummings v. Nat. Furnace Co.* 60 id. 603.

Lyon, J. The alleged errors assigned for a reversal of the judgment herein will be considered in their order.

I. Certain rulings of the court upon objections to testimony will first be disposed of:

1. Col. E. A. Calkins was in the car when the plaintiff was injured, and his deposition, taken at the instance of the defendant, was read in evidence on the trial. On motion of plaintiff's counsel the court suppressed therefrom the following question propounded on behalf of the defendant: "Do you remember anything about the length of the stop of the car at the corner of Marshall street, so as to give some idea of what it was?" The answer (also rejected) was: "My recollection is that it was a little longer than usual at street corners," to which the witness added, "and a subject of remark among the passengers; it was a little tedious waiting so long at this corner." The portion of the answer last quoted was irresponsive to the question, which did not call for the grounds of his recollection, and was incompetent testimony for the defendant. But the portion first quoted was responsive to the question, and material and relevant to the issue, and the question was a proper one. We do not understand why counsel objected thereto, or why the court should have suppressed the question, or the unobjectionable portion of the answer.

But the witness was afterwards interrogated, concerning the time of the same stop, thus: "From your recollection was the length of the stop on that occasion greater or less than that usually required in order to enable passengers to get out of a car and to step freely on the ground?" The witness answered this question substantially as he did the other, and the answer was allowed to stand. Elsewhere in

his deposition the witness also stated that "the stoppage was for some little time,— as long as usually occurs at street corners, in my experience in that line, for passengers to get on board." The witness having thus been allowed to testify fully on the subject, and such testimony having been retained in his deposition, the error in rejecting the first question and his answer thereto becomes immaterial.

2. On his cross-examination, in answer to questions put by counsel for plaintiff, Col. Calkins testified to a conversation with Mr. Smith, the president of the defendant company, concerning the accident, and what was said in that conversation. On his redirect examination Mr. Smith put this question: "I asked you if the bell was rung for the car to stop. Do you recollect whether you answered: 'No, there was no bell rung'?" The witness answered: "I don't recollect that remark particularly, but I do recollect conveying to you the opinion that was in my mind." The opinion referred to was not called for, although it may fairly be inferred from Col. Calkins' deposition that he thought the plaintiff did not ring the bell. An objection to the above question and answer was sustained.

No objection having been taken to the form of the question (which is leading), we do not perceive any good reason for suppressing it. But the answer substantially denies recollection that he told Mr. Smith no bell was rung; hence the testimony was of no benefit to the defendant, and the rejection of it could not have operated to its prejudice.

It was maintained in the argument that the court must determine from the rejected interrogatories alone whether or not it was error to suppress them. This is doubtless a correct proposition. But having determined it was error to suppress them, we must look into the answers to determine whether such errors are material,— whether they could possibly have prejudiced the defendant. We conclude they could not have had that effect.

3. The driver of the car which the plaintiff was leaving when she was injured was produced in behalf of the defendant as a witness. He testified, on his direct examination, that the ringing of the bell was a signal for the car to stop to allow a passenger to get off, and that sometimes passengers informed him orally where they desired to leave the car. He said, further: " In case that signal [the ringing of the bell], or any other signal, had been given to me that a passenger wished to get off, my duty would have been, and my practice, to know they were off,— to clear the car before I started the car." Immediately thereafter the witness was asked these questions: "In the ordinary course of your duty and practice, what would you have done had you received such a notice?" "What is your duty and practice upon receiving such a notice?" The first question relates to a notice by ringing the bell, the other to personal notice. The court sustained an objection to each question.

The rulings were correct for two reasons: (1) The witness had previously answered the questions fully, and his testimony on that subject is uncontradicted. A repetition of it was useless. (2) The *duty* of the driver in the contingencies mentioned is a proposition of law; his *practice* was entirely irrelevant to the issue, as well as immaterial.

4. One Zigourney was produced by the defendant, and gave testimony. On his cross-examination he was asked whether on a certain specified day, and in a certain cigar store in Milwaukee, he had a conversation with one E. B. Simpson relative to this case, and whether he made certain specified statements to Simpson in that conversation. The witness denied recollection of any such conversation. One Edward Simpson was afterwards called by plaintiff, and interrogated as to such conversation, for the purpose of impeaching the credibility of Zigourney. He testified that another man named E. B. Simpson lived in the city. The plaintiff was allowed, against objection, to propound to the

witness the question whether, at the time and place mentioned, Zigourney made the statements to him concerning which he (Zigourney) had been interrogated; and the witness answered that he did, in substance.

The form of the question, although leading, is unobjectionable. Leading questions must be put in such cases. Sufficient foundation was laid for the impeaching question, had it been propounded to E. B. Simpson. The only plausible objection to it arises out of the fact that E. B. Simpson was named in the questions to Zigourney, and Edward Simpson, another person, was the witness under examination. The purpose and object of requiring the attention of a witness whose credibility the opposite party intends thus to impeach, to be called to his alleged contradictory statements before proof of them can be received, is obvious. It is to give him an opportunity to recollect the facts, and, if necessary, to correct his testimony, or to explain the nature, circumstances, and design of what he may have said elsewhere on the subject. 1 Greenl. Ev. § 462. We are of the opinion that the attention of the witness Zigourney was called to his alleged contradictory statements with sufficient definiteness and accuracy to fulfil the requirements of the rule, and that he could not possibly have been misled or prejudiced by the circumstance that he was interrogated concerning a conversation with E. B. Simpson when, in fact, it was with Edward Simpson. This is especially true when it is considered that there is no proof or suggestion that Zigourney knew there were two Simpsons in the city. We conclude that it was not error to allow Edward Simpson to testify to the alleged conversation.

II. In his closing argument of the cause to the jury Mr. Quarles, one of the counsel for plaintiff, used the following language: " Gen. Winkler has made a pathetic appeal to you in behalf of this struggling corporation,— this poor fledgeling. He has carried the idea that its feeble existence

depends upon your clemency; that if required to employ conductors it would stagger under the burden of the expense. Gen. Winkler did not tell you that this corporation paid a dividend of twenty-three per cent. last year." Mr. Smith, counsel for defendant, interrupting counsel, said: "There is no such evidence, and it is not true." Mr. Quarles responded: "I know there is not, and I do not make the statement as a fact proven. I do not state that it paid any dividend, but I mean that if counsel go outside the record to talk about the poverty of the corporation, my conjecture is as good as his. It would be more satisfactory to the jury to see the books bearing on the dividend question." It is certified in the bill of exceptions that Gen. Winkler had not made the sugges- tion thus attributed to him, or anything of a similar char- acter. Later in his argument, and near its close, Mr. Quarles said: "These corporations have no feelings. Their sensitive nerve leads only to a dividend. You have warm hearts beating under your waistcoats, but this corporation can only be reached through the sensibility of the pocket." After the statement of the foregoing proceedings the bill of ex- ceptions proceeds as follows: "To each of which remarks so made the defendant's counsel objected and excepted. The court adjourned at the conclusion of the argument until the next morning."

The remarks of counsel just above quoted were improper,— the more especially so since it appears that the alleged excuse for indulging in them was unfounded in fact; yet we must believe that counsel understood that Gen. Winkler made or suggested the argument imputed to him. However that may be, Mr. Quarles, when interrupted by Mr. Smith, frankly stated that there was no proof of the dividend of the defend- ant; that he did not refer to the matter as a fact proven, and did not state that the company had paid dividends; that he was only putting conjecture against conjecture, both outside the proofs. It seems to us that it is possible to pre-

vent any supposable wrong or injury to the defendant as the result of the improper remarks of counsel.   Such result was prevented by the disclaimer of counsel.   To hold that the jury might be prejudiced against the defendant by those remarks, and that their verdict might be tainted with such prejudice, after counsel had expressly told them there was no proof on the subject, and that he did not mean to state that the company paid dividends, would be a gross imputation upon their integrity and intelligence.   It is also worthy of remark that Mr. Quarles, when he made the remarks in question, was evidently maintaining that it was the duty of the defendant to employ conductors as well as drivers on the cars; and that this proposition was not submitted to the jury, and does not enter into the determination of the case.

We think the last remarks of counsel to which exception was taken are harmless.  The purport of them seems to be that the defendant was organized and prosecuted its business for the purpose of pecuniary gain; that it had no physical body or parts, and hence could only be reached in a financial way, while the jurors had real hearts, properly located, and of the proper temperature.   True the remarks are quite rhetorical, but they seem to be but a burst of the enthusiasm of counsel, kindled by his theme, and culminating in his peroration.   We cannot think that his language, in the connection in which it was spoken, could possibly have affected the verdict.

III. The next morning, after the arguments in the case had been closed, but before the court charged the jury, counsel for defendant asked to have one Lindsey Webb sworn and examined as a witness for the defendant.   It appeared by the affidavit of Webb that when the car in question was stopped at the Marshall street crossing he was near the corner of Cass and Ogden streets, going east to get upon the car; that he heard no car bell ring before the car stopped, and is certain none was rung before it started

again.  After it started he heard two sharp rings of the bell, when the car again stopped fifteen to twenty-five feet west of the crossing.  He entered the car and had a conversation with the passengers therein concerning the accident to plaintiff.  He details this conversation at some length in his affidavit, but it clearly would have been inadmissible as testimony in the case.  It occurred in the absence of the plaintiff, and was not of the *res gestæ*.  The substance of his proposed testimony is that his attention was directed to the car; that he could have heard the car bell had it rung; and that he did not hear it ring until after the car started from the crossing.  The counsel sufficiently excused his failure to call Webb as a witness earlier in the trial.  After using great diligence he failed to discover the testimony until the morning he sought to introduce it.  The court denied the request to allow Webb to be sworn and examined as a witness.

Several passengers who were in the car at the time testified that they heard no bell ring before the accident, and some of them assert more or less positively that none was rung.  These witnesses had as good, perhaps better, opportunities than Webb to know whether the bell was or was not rung.  The attention of some of them was directed to the matter by circumstances then present as strongly as was that of Webb, and they appear to be equally credible.  These facts seem to render the proposed testimony of Webb entirely cumulative.  It is not the case of different witnesses testifying to different specific facts, all tending to prove the same general proposition, but of different witnesses testifying to the same fact.  Herein lies the distinction between this case and the cases of *Wilson v. Plank*, 41 Wis. 94, and *Smith v. Smith*, 51 Wis. 665, cited for the defendant.  We think it was within the sound discretion of the trial court to open the case and admit the testimony or to refuse to do so.  We are unable to say that such refusal

was an abuse of that discretion.   The remarks in the opinion of *Stewart v. Stewart,* 41 Wis. 624, relative to letting in newly discovered evidence after the proofs have been closed, are made with reference to suits in equity.   Probably they are also applicable in a case at law tried without a jury.   But in jury trials due and orderly procedure is usually more necessary, and often cannot be departed from as safely as in the other classes of cases mentioned.

IV. We will now consider the errors assigned upon the charge of the court, and the refusal to give a portion of an instruction asked in behalf of the defendant.

1. The whole instruction last mentioned is as follows: " Although the law allows parties to be witnesses on their own behalf, their testimony is to be examined with greater scrutiny than that of disinterested witnesses.   You may consider, in determining upon the credibility of the plaintiff's statement, the motive she had to testify in her own favor; and you should especially remember how far she is contradicted by disinterested witnesses upon the most material matters."   The court gave the first sentence of the proposed instruction, and refused to give the last sentence thereof.

When the court told the jury that they were to scrutinize the plaintiff's testimony more closely than they were required to scrutinize the testimony of witnesses who were not interested in the result of the action (for that is what the instruction means), he charged them, by direct and unmistakable implication, not only that they *might* consider in determining upon the credibility of the plaintiff's statement the motive she had to testify in her own favor, but that they *must* consider the fact that she was testifying in her own behalf, and for that reason it was their duty to give greater scrutiny to her testimony.   Moreover, the testimony of an interested witness in his own favor is always looked upon with distrust and suspicion, especially if it is opposed

by disinterested testimony; and a jury will naturally scrutinize such interested testimony very closely, and will necessarily have regard to the motive of self-interest which may have influenced the witness, before accepting his testimony as true, even though a specific instruction to do so has not been given.

The remaining portion of the rejected instruction — that the jury should especially remember how far the plaintiff. was "contradicted by disinterested witnesses upon the most material matters" — was abundantly given in the general charge, and more fully and specifically than was called for by the proposed instruction. The court therein referred to the testimony of several witnesses, naming them, whose testimony tended to show that plaintiff did not ring the bell as a signal that she desired to leave the car at Marshall street, and especially mentioned certain circumstances to which those witnesses testified tending to show that had the plaintiff rung the car bell they would have seen her do so, and would have remembered the fact. Surely that was a sufficient instruction on the subject, and the defendant was not entitled to a repetition of it.

While, therefore, the portion of the proposed instruction which the court refused to give contains a correct statement of the law, it was not error to reject it because the same was sufficiently given in the charge to the jury.

2. The court gave an instruction to the effect that if the plaintiff was negligent, and her negligence contributed to the injury of which she complains, she cannot recover; but there is an expression in the instruction which it is claimed might have led the jury to understand that she could recover, although herself negligent, unless the car driver was in the exercise of proper care and prudence at the time. Of course, the learned county judge meant nothing of the kind, and elsewhere in his charge laid down the law on the same subject correctly and clearly. But the criticised in-

struction is quite immaterial. The case turns on the special findings. The general verdict for the plaintiff is not considered in the determination of this appeal. The consequences of the contributory negligence of the plaintiff do not affect any of the findings contained in the special verdict, and an erroneous instruction on that subject could do no harm, or a correct one any good, to either party.

3. The jury were further instructed as follows: " The rule of law is that the positive testimony of one credible witness to a fact is entitled to more weight than the testimony of several witnesses equally credible who testify negatively, or to collateral circumstances merely persuasive in their character from which a negative may be inferred." Error is assigned upon this instruction. It embodies the rule laid down in 3 Greenl. Ev. § 375, and applied by this court in *Ralph v. C. & N. W. R. Co.* 32 Wis. 177. See, also, *Bohan v. M., L. S. & W. R. Co.* 61 Wis. 391. Counsel do not challenge the accuracy of the rule in a proper case, but maintain that this is not such a case.

The cause was tried in the county court on the theory that if the plaintiff rung the car bell either before the car reached Marshall street or while it was standing on the west crossing of that street, she was entitled to recover; otherwise not. That was the material issue litigated on the trial. The plaintiff testified that she rang the bell both before the car reached Marshall street and while it was standing at the west crossing of that street just as she started to leave the car. Of course that is positive testimony. On the other hand, the driver and six passengers who were in the car each testified that he or she did not hear the car bell ring until it was rung by a lady passenger just as plaintiff was falling from the car. Some of these witnesses are very positive that the plaintiff did not ring the bell at any time, and, as already observed, they state circumstances tending to show that had she rung the bell they would have been

likely to see her do so, and to remember the fact. The circumstances thus testified to tend to increase the weight of the testimony of those witnesses; yet, after all, their testimony that the plaintiff did not so ring the bell, or that they did not see her do so, and would have seen her ring it had she done so, no matter how positive it may be in form, is negative testimony. It may be reliable testimony,— it may be convincing under the circumstances,— but it is essentially negative testimony. Such being its character, and it being opposed by positive testimony to the contrary which the jury were at liberty to believe, the rule of evidence stated to the jury was applicable, and it was not error to give it.

V. The learned counsel for the defendant maintained in argument, with great earnestness and ability, that the first and second special findings are unsupported by testimony, and that there should be a new trial for that reason. Those findings are that the plaintiff rang the car bell before the car reached Marshall street as a signal that she intended to leave the car at the crossing of that street, and that she again rang it shortly after the car came to a halt at that crossing. Upon the theory on which the cause was tried, one of these findings is indispensable to a recovery by the plaintiff, and so the jury were instructed.

Counsel for the plaintiff claim that the ringing of the bell by the plaintiff, or her failure to ring it, is not the controlling fact in the case, but that she is entitled to recover on other grounds, even if she did not ring the bell. The argument is that before starting the car from the crossing it was the duty of the driver to see that no passenger was in the act of leaving it, even though the usual signal that some one of them desired to do so had not been given. This may be a correct rule of law, or it may not. We do not determine the point. We agree with the trial judge that the only negligence charged in the complaint was the starting of the car after the plaintiff had rung the bell,

before she had a reasonable time in which to alight therefrom.

The question is, therefore, Does the testimony support the above-mentioned findings in the special verdict? The testimony in regard to the alleged ringing of the bell by the plaintiff has already been sufficiently stated. The plaintiff testified positively that she rang it before the car reached Marshall street, and again while it stood on the crossing. It is claimed that there is other testimony tending to corroborate her statements in that behalf. We do not stop to inquire whether the claim is a valid one, but choose rather to dispose of the case on the hypothesis that the plaintiff gave the only testimony in support of the challenged findings. Seven witnesses gave testimony tending, in a greater or less degree, to controvert that of the plaintiff; but, as before stated, the testimony of the plaintiff is positive, while that of the opposing witnesses is negative. It was competent for the jury to credit the positive testimony of the plaintiff, as they evidently did.

This court has held that where a transaction is established by positive and satisfactory testimony, the mere negative testimony of persons present at the time, to the effect that they did not see or hear or know of the transaction, is not sufficient to justify a finding that no such transaction took place. *Bohan v. M., L. S. & W. R. Co.* 61 Wis. 391. See, also, *Muster v. C., M. & St. P. R. Co.* 61 Wis. 325. It should be observed that these cases turned upon the weakness of the negative testimony, and furnish no rule for cases in which such testimony is strengthened by the attending circumstances. But we are not aware that it has ever been held in any case that a jury must disregard the positive testimony of a given fact, and find against it merely because there is much negative testimony tending to show the nonexistence of the fact.

We conclude that the findings under consideration are supported by the proofs.

VI. The only remaining question to be determined is, Were the damages assessed by the jury excessive? The plaintiff was, when injured, an unmarried women seventy years of age. The jury might properly have found that she was an active woman, physically sound and healthy, and able and competent to earn money by teaching music and doing fancy needle-work. They might also have found from the evidence that the injury in question has permanently destroyed the use of one of her limbs; that she will be a cripple for life; that her health is greatly impaired; that she had suffered, and would thereafter suffer, great pain by reason of the injury; that it had impaired if not shattered her nervous system; that it had incapacitated her for her usual pursuits; and that her expenses for nursing and medical and other attendance were several hundreds of dollars.

This court has never disturbed a verdict in such a case for mere excessiveness of damages. The furthest it has ever gone in that direction was in *Baker v. Madison*, 62 Wis. 137, where a verdict for $6,000 was held excessive because on the same evidence, on former trials, one jury had assessed the damages at $3,000 and another at $2,500. It is strongly intimated in the opinion in that case, and might as well have been expressly declared, that had the $6,000 verdict been the first one in the case it could not have been properly disturbed. So, in *McLimans v. Lancaster*, 63 Wis. 596, there had been a trial and a verdict for plaintiff for $2,000. A new trial having been granted, the second jury assessed the plaintiff's damages at $8,000. While the action was pending a law was enacted limiting damages in that class of actions to $5,000. In deference to the legislature, and having due regard to the vast disparity between the two verdicts, we reduced the recovery to $5,000. But we have here

JANUARY TERM, 1886.     341

no such case.  This is the first verdict.  The injury is permanent and a very grievous one.  The unfortunate plaintiff is undoubtedly doomed to a life of decrepitude, dependence, and pain.  The rule firmly established in this court by numerous adjudications forbids any interference with the verdict for alleged excessiveness of damages.

Finding no rulings of the trial court of which the defendant can justly complain, we cannot disturb its judgment.

*By the Court.*— Judgment affirmed.