GRACE, Respondent, vs. McARTHUR, Appellant.

*April 12 — April 29, 1890.*

| 76 | 641 |
| 77 | 572 |
| 76 | 641 |
| 78 | 572 |
| 76 | 641 |
| 85 | 586 |

*(1, 2) New trial: Newly discovered evidence. (3–5) Libel: Evidence. (6, 7) Practice: Improper remarks by counsel to jury: Dispute as to evidence. (8) Punitory damages: Instructions to jury. (9) Excessive damages.*

1. A new trial should not be granted on the ground of newly discovered evidence upon a question which was not considered material by either party upon the first trial, especially where the decision of that question either way would not be decisive of the rights of the parties.

2. It is not an abuse of discretion to refuse to grant a new trial for newly discovered evidence upon a certain question, where it appears that the testimony upon that question would be uncertain and conflicting and wholly inconclusive. To justify this court in reversing an order refusing to grant a new trial on such ground, the newly discovered evidence should be of such a character as would probably change the result of the trial. *Goldsworthy v. Linden,* 75 Wis. 24, criticised.

3. In an action for libel publications by the defendant other than the one complained of are admissible to show malice.

4. It is not a material error to permit the plaintiff to testify as to a conversation relating to a publication not introduced in evidence, where such evidence was so remote from the issues in the case that it could not have prejudiced the defendant, and did not disclose the character of such publication or anything more than had been alleged in the answer and shown by the defendant on cross-examination of plaintiff's witnesses.

5. Defendant's offer, after the evidence had been closed, of an article published by himself, was properly refused as coming too late, and as the offer of his declarations in his own behalf.

6. Where an attorney was called to order by the court for making a remark to the jury, and did not repeat or persist therein, there was no error.

7. Where, during the argument to the jury, there was a dispute between counsel as to whether certain testimony had been given, it was not error for the court to say to the jury that they would remember whether or not there was such testimony; that he did not remember.

8. In an action for libel, a charge that punitory damages "are given

VOL. 76 — 41

Grace vs. McArthur.

by way of punishment or example, when it is found that the acts of the defendant, tending to the injury of the plaintiff, are wilful, wanton, or malicious," is *held* not erroneous, where the jury must have understood that the words "wilful, wanton, or malicious" meant the express malice and personal ill will before spoken of in the charge, and not merely implied malice.

9. In an action for libel, where the jury might properly have found that the libelous article was published in a newspaper with express malice, a verdict for $3,000 is *held* not excessive.

APPEAL from the Circuit Court for *Iowa* County.

Action for a libel. The publication complained of was as follows:

"THE RUNNING DISGRACE OF GRACE.

"On Monday, just as attorney *Grace* was shaking the dust of Highland off his feet and removing himself mysteriously out from among the men and things that had known him for so many years, the sheriff of this county was wending his way to the quiet, thrifty, law-loving Christian village that *Mr. Grace* was so stealthily leaving. The sheriff was sent by *Grace* upon a graceless mission. He had in his possession for service the papers in an action of attorney *Grace* against some fifteen of the best citizens of Highland, from whom he claimed, jointly and severally, the modest sum of fifteen thousand dollars. It seems that *Mr. Grace* had been making serious charges against a clergyman of Highland who possesses the esteem and cordial respect of all the good people of Highland and elsewhere wherever he is known. The people, knowing that there was no truth in *Mr. Grace's* assertions, called upon him to protest against such injustice. It is said that *Mr. Grace*, of his own accord, took back all he said, seemed very penitent and sorrowful, went to the home of the clergyman, and upon his knees begged pardon for what he had said. He admitted that what he said was untrue, wickedly false, and a vile slander. There was no force used, nor compulsion or restraint put upon him. What he did was done through a sense of guilt and degradation which the presence of honest men and the consciousness of his wrong moved him to do. Of course, he lost respect, his business dropped off, decent men with whom he had associated avoided him, he became sullen and morose, people looked upon him as a self convicted slanderer of sacred innocence. He in some way conceived that these worthy men who called on him were responsible for his infamy, and in this notion commences his action, and valiantly leaves the community before anyone knew what folly he meditated. There seems to be all through his conduct a low, vindictive, malicious

spirit of spite. He had made complaint against one of his neighbors for assault and battery committed over a month ago. He had a warrant issued out before one of our justices here in Dodgeville, had four witnesses summoned, and planned it so that the arrest should be made on the very day he was fleeing from Highland. The parties who had the difference did not desire litigation, and if it was proper that either should be arrested, the suit ought to be brought before a justice of the town where both of them reside. But *Mr. Grace* did not seek justice; he sought revenge, and so he brings a suit here in Dodgeville, twenty miles removed from the place where the trouble occurred and where the witnesses and parties implicated reside. Of course the costs to this county or to the accused, whoever should lose, were greatly increased by reason of the great distance to the place of trial; and then he, after commencing this suit, runs away and leaves it, fleeing no man knows whence. The people remember that when *Mr. Grace* was upon the county board, and when the question of giving money to our county officers which they did not earn was to be voted on, *Mr. Grace* went to the clerk and requested that his name be called last. He had not the courage and independence of character to stand up and say what he thought; he wanted to know where the majority was, to be with them. Now any man who is so small and cowardly to do as *Mr. Grace* has done in the arrest he caused to be made, in his conduct on the county board, is mean enough to slander the pure, noble character of a clergyman, basely retract on his knees that infamous slander, commence an action without reason, and run away from lack of manliness and confidence in the justness of his cause. We knew of the vile stories he had circulated and the debasement he took upon himself months ago, but as what he said cruelly reflected upon the honor of his own home, we refrained from making any comment upon it. But now, as he himself is the instrument to make public a disgrace which no respectable man in Highland believes, silence in respect to it ceases to be commendable. It looks very much like a case of striving to acquire a fortune by the dishonor of his home."

Other facts are stated in the opinion. See, also, the case of *Grace v. Dempsey*, 75 Wis. 313.

*H. W. Chynoweth*, for the appellant.

For the respondent there was a brief by *Olin & Butler*, and oral argument by *John M. Olin*. They argued, among other things, that the motion for a new trial was addressed to the legal discretion of the trial court, and this court will not interfere unless there was a clear abuse of that discre-

tion. *McLimans v. Lancaster,* 57 Wis. 299; *Barnes v. Merrick,* 6 id. 57; *Cook v. St. L. & K. R. Co.* 56 Mo. 380; *Barrett v. T. A. R. Co.* 45 N. Y. 628, 632; *Lampsen v. Brander,* 28 Minn. 526; *Cirkel v. Crosswell,* 36 id. 323; *Ables v. Donley,* 8 Tex. 331, 336; *Jalie v. Cardinal,* 35 Wis. 118, 125; *Evans v. Rugee,* 63 id. 31; *Perry v. Cochran,* 1 Cal. 180; *Carson v. Dellinger,* 90 N. C. 226. Applications of this nature are regarded with suspicion and disfavor. *Edmister v. Garrison,* 18 Wis. 603; *Conradt v. Sixbee,* 21 id. 383; *Jalie v. Cardinal,* 35 id. 125; *Cook v. St. L. & K. R. Co.* 56 Mo. 380; Hayne, New Trial and App. sec. 87; *Moore v. Philadelphia Bank,* 5 S. & R. 41; *Baker v. Joseph,* 16 Cal. 173, 180; *Lampsen v. Brander,* 28 Minn. 526; *Fuller v. Harris,* 29 Fed. Rep. 814, 818; *Comm. v. Murray,* 2 Ashm. (Pa.), 41, 49; *Comm. v. Williams,* id. 69, 75; *Parker v. Hardy,* 24 Pick. 246, 249; *Pleasant v. State,* 13 Ark. 360, 379; *Cirkel v. Crosswell,* 36 Minn. 323; *Pinschower v. Hanks,* 18 Nev. 99; *People v. Sutton,* 73 Cal. 243. Affidavits in support of a motion for a new trial are not to be taken as true, but the trial court may consider counter affidavits. *De Hart v. Aper,* 107 Ind. 460; *Mead v. Constans,* 5 Minn. 176; *De Hart v. Etnire,* 121 id. 242; *Peterson v. Faust,* 30 Minn. 22; *Parker v. Hardy,* 24 Pick. 246, 249; *Ames v. Howard,* 1 Sum. 482, 491; *City & S. R. Co. v. Findley,* 76 Ga. 317; *Schnurr v. Stultz,* 119 Ind. 429; *Fleming v. Hollenback,* 7 Barb. 271, 276; *Powell v. Jones,* 42 id. 24, 28; *Williams v. People,* 45 id. 206; *Cirkel v. Crosswell,* 36 Minn. 323; *Eldridge v. M. & St. L. R. Co.* 32 id. 253; *Sikes v. Parker,* 95 N. C. 232, 238; *People v. Miller,* 33 Cal. 99, 102; *Board of Regents v. Linscott,* 30 Kan. 240; *Merk v. Gelzhaeuser,* 50 Cal. 631; *Harris v. Rupel,* 14 Ind. 209, 212; *Mercer v. Mercer,* 87 Ky. 21; *Ruble v. McDonald,* 7 Iowa, 90; *Erskine v. Duffy,* 76 Ga. 602, 611; *Atlanta v. Buchanan,* id. 585; *Simmons v. Fay,* 1 E. D. Smith, 107; *Fowler v. Kelly,* 43 N. Y. Super. Ct. 383; *Pomroy v. Columbian Ins.*

*Co.* 2 Caines, 260; *Williams v. Baldwin,* 18 Johns. 488; *People ex rel. Oelricks v. Superior Court,* 10 Wend. 285; *Kelleher v. Kenney,* 4 Pac. Rep. (Cal.), 1095; *Coast Line R. Co. v. Boston,* 83 Ga. 387; *Byrne v. Reed,* 75 Cal. 277; *Hartwright v. Badham,* 11 Price, 383; *State v. Betsall,* 11 W. Va. 703, 731; *Stoakes v. Monroe,* 36 Cal. 383, 389; *Wallace v. State,* 70 Ga. 722; *Ross v. Sedgwick,* 69 Cal. 247; *Conradt v. Sixbee,* 21 Wis. 383; *Wilson v. Plank,* 41 id. 94; *Pike v. Vaughn,* 45 id. 660. A motion for a new trial on the ground of newly discovered evidence will not be granted unless such evidence will upon another trial probably produce an opposite result. *Schultz v. T. A. R. Co.* 47 N. Y. Super. Ct. 285; *Starin v. Kelly,* id. 288; *Fowler v. Kelly,* 43 id. 380; *Darbee v. Elwood,* 67 Barb. 359; *Thompson v. Comm.* 8 Gratt. 637, 646; *Sikes v. Parker,* 95 N. C. 232, 238; *Simmons v. Mann,* 92 id. 12, 16; *Smith v. Schultz,* 2 Ill. 490; *Hines v. Driver,* 100 Ind. 315; *Middletown v. Adams,* 13 Vt. 285; *Hall v. Lyons,* 29 W. Va. 410; *Crafts v. Union M. F. Ins. Co.* 36 N. H. 44, 50; *Lessee of Ludlow's Heirs v. Park,* 4 Ohio, 15, 45; *Mead v. Constans,* 5 Minn. 171, 176; *Moore v. Philadelphia Bank,* 5 S. & R. 41, 42; *People ex rel. Dickinson v. Sackett,* 14 Mich. 320; *Lampsen v. Brander,* 28 Minn. 526; *Cirkel v. Crosswell,* 36 id. 323; *State v. Alverez,* 7 La. Ann. 283, 285; *State v. Ray,* 53 Mo. 345, 349; *Armstrong v. Davis,* 41 Cal. 494, 500; *Merk v. Gelzhaeuser,* 50 id. 631; *Allen v. Perry,* 6 Bush, 85, 90; *Finley v. Tyler,* 3 Mon. 400; *Roach v. State,* 34 Ga. 78, 83; *Starling v. St. Paul Plow - Works,* 32 Fed. Rep. 290; *Allyn v. Willis,* 65 Tex. 65; *People v. M'Donnell,* 47 Cal. 138; *Hull v. Kirkpatrick,* 4 Ind. 640; *Newton v. Gardner,* 24 Wis. 232, 235; *Conradt v. Sixbee,* 21 id. 383.

TAYLOR, J.   This action was brought to recover damages for the publication of a libelous article in a newspaper controlled and published by the defendant, in the county where

the plaintiff and defendant both resided, charging the plaint-
iff with gross misconduct in his official character as a pub-
lic officer, and scandalous and infamous conduct as a private
citizen.    The defendant justified the publication of the
article, and alleged the truth of the material facts charged
therein.    The case was tried in the circuit court, and a
judgment was rendered in favor of the plaintiff and against
the defendant for the sum of $3,000 damages and the costs
of the action.    From this judgment the defendant appeals
to this court.

On the argument of the case in this court, the learned
counsel for the appellant asks a reversal of the judgment:
(1) Because the circuit court erred in refusing to grant a
new trial upon the application of the defendant, on the
ground of newly discovered evidence; (2) that the court
erred in admitting certain evidence offered by the plaintiff
on the trial; (3) that the court erred in rejecting certain
evidence offered by the defendant; (4) that the court erred
in the instructions to the jury.

The application for a new trial upon the ground of
newly discovered evidence was based upon the claim of
the defendant that since the trial they had discovered evi-
dence which disproved, or tended to disprove, the claim
made upon the trial by the plaintiff that his first child, al-
though born about eight months after his marriage, was a
mature child, and not one born out of time.

The first question to be considered upon the motion for
a new trial on the ground of newly discovered evidence, is
whether such evidence would prove, or materially tend to
prove, some material fact in issue and controverted on the
trial.    An examination of the pleadings will show that the
most serious charge made in the libelous article published
by the defendant is the charge that the plaintiff had made
a false and malicious charge of adultery against the priest
of his own church, and the article further alleges that, after

having made such false and malicious charge against the priest, the plaintiff voluntarily went before said priest, and in his presence, and in the presence of a large number of the most respectable members of the congregation, voluntarily, and upon his knees, confessed that the charge was false; that what he said in regard to the conduct of the priest was not true, and was a vile and false slander. In his answer, the defendant sets up the charge made by the plaintiff against the priest by introducing a letter written by him to the priest, accusing the priest of adulterous intercourse with his wife, and asking him to clear up the suspicious circumstances against him, and, in case of his failure to do so, threatening him with punishment. The answer then alleges that, after receiving this letter, the priest submitted it to a number of his parishioners, and that they brought the plaintiff before the priest (he coming voluntarily and willingly), and then, upon his knees before the priest and in the presence of such parishioners, the plaintiff voluntarily "admitted that the charges made in said letter reflecting upon the character of the priest were false, malicious, and untrue." It is also evident from the pleadings that the defendant knew at the time he published the libelous article that the plaintiff denied the truth of the alleged statement that he had confessed voluntarily that the charges made against said priest were false or malicious, and that the plaintiff insisted that they were true. The answer of the defendant alleged the truth of all the material allegations of the article, and answered, by way of mitigation and justification, that he was informed by a large number of respectable citizens that such material allegations were true.

In reading the case as presented by the appellant to this court, it appears that the evidence on the part of the defendant, so far as it relates to the charges of adulterous intercourse on the part of the priest and plaintiff's wife,

was confined almost exclusively to the transactions and statements of the plaintiff, made in the presence of the priest and congregation, in regard to such charge, and as to his voluntary retraction of such charges, and his admission of their falsity. I find no other evidence given by the defendant on the trial in regard to this matter, except the evidence of Mr. Mooney, the husband of plaintiff's wife's mother. This witness testified that he had a conversation with the plaintiff as to his wife's character, and he asked plaintiff if there was any doubt about his believing that Annie (plaintiff's wife) was wrong, and he (plaintiff) said "No," that he had not the least doubt in his mind but that Annie was all right; and that there was something more said, but he could not tell what. On the part of the plaintiff, witnesses were introduced to controvert the claim made by the defendant and his witnesses that he had ever made any voluntary admission of the falsity of the charges made against the priest, and to show that the alleged admission and retraction were made, if made at all, under coercion, and when in fear of great bodily harm. The plaintiff was also a witness on his own behalf, and gave a detailed account of the circumstances which induced him to make the charges against the priest and his wife, and, among other circumstances, he mentioned the fact that his first child was born eight months and eight days after the day of his marriage. On his examination in his own behalf, he made no statement upon the subject of the maturity or immaturity of the child at the time of its birth. On cross-examination by the defendant in reply to questions put to him the plaintiff stated that he "saw no signs of premature birth on the child." It seems to us clear that as the defendant tried the case without regard to the question of the maturity or immaturity of the child, and as the plaintiff made no point of that fact on his part to justify his charges against the priest, it is too late for the defendant to make the question of the ma-

turity or immaturity of such child at its birth a material issue in the case, and ask a new trial for the purpose of introducing evidence upon that question.  If the question is at all material to the rights of the defendant he should have raised the question on the trial, and introduced his evidence.  A party defendant cannot try his case upon one theory of his defense, and, when defeated upon that theory, ask a retrial to permit him to try it upon another issue or theory.  The maturity or immaturity of the plaintiff's first child when born was not considered a material question, either by the plaintiff or defendant, on the first trial, and a new trial should not be granted in order to permit a retrial upon that question, especially as a retrial necessarily opens the whole case for a second trial.

There are other sufficient reasons why a new trial should not be granted merely to litigate that question.  In the first place, the decision of that question either way would not be decisive of the rights of the parties to the action.  If the defendant should establish the fact so as to convince the jury that the child was prematurely born, there is still sufficient evidence in the case to justify a verdict for the plaintiff.  There is therefore no such probability that what is called the " newly discovered evidence " would change the verdict, as would justify the court in granting a new trial.  The pleadings in the case show that the defendant knew when he published the libelous articles complained of that the plaintiff considered the birth of his first child as some foundation for the charge made against the priest, and he must have known, therefore, that the question as to whether the child was prematurely born would be to some extent a material fact in determining the question whether the plaintiff had any good reason to make the charge he did against the priest.  The defendant tried the case, however, without any attempt to prove on his part that the plaintiff's suspicions were wholly unfounded, so far as they might

have been aroused by the birth of this child, by showing
that the birth was premature. And the plaintiff on his part
does not in his evidence given in his own behalf claim that
such child was a mature child when born, but simply states
the fact of the time of its birth. It seems to us that to open
the case now to litigate that question would not be in
furtherance of justice. If the question was a material ques-
tion upon the defense of the action, the defendant knew it
just as well before the action was tried as he does now, and
he should have prepared his testimony on that point, and
introduced it on the trial, and, having failed to do so, he is
not entitled to a new trial now, to strengthen his defense
by the introduction of evidence which he supposed was un-
necessary to his successful defense on the trial of the action.
These reasons would be amply sufficient to sustain the order
of the court refusing the new trial.

But, if these reasons were not conclusive to sustain the
discretion of the trial court in refusing the new trial, there
is sufficient appearing upon the affidavits before the circuit
judge on the motion which would justify the judge in re-
fusing to grant the order, had there been no fault on the
part of the defendant in not litigating the question on the
trial of the action. These affidavits show very clearly that
the testimony on the point proposed to be tried would be
of the most uncertain and conflicting character, and wholly
inconclusive as to the fact.

The judge who tried the case and who heard the motion
is in a better situation than this court can be to determine
the question as to the probabilities of the result of a new
trial of the case after this question had been fully litigated,
and, he having determined that the testimony proposed to
be given on this point would not probably change the re-
sult of the trial already had, we cannot say the learned
judge abused his judicial discretion in refusing a new trial
on this ground. The granting or refusing of a new trial on

the ground of newly discovered evidence is to some extent a matter of discretion on the part of the trial judge, and, when in his discretion he denies the motion, it must be a clear case of mistake in the exercise of such discretion which will justify this court in reversing his order. *Conradt v. Sixbee,* 21 Wis. 383; *Pike v. Vaughn,* 45 Wis. 660, 662; *Wilson v. Plank,* 41 Wis. 94; *Smith v. Smith,* 51 Wis. 665; *Hinton v. C. C. R. Co.* 65 Wis. 323, 334; *Goldsworthy v. Linden,* 75 Wis. 24. In this last case, Justice CASSODAY says, if the newly discovered evidence is of such a character as *might* change the result of the trial, it is sufficient. We think the word "might" is too strong a word in that connection, and that the newly discovered evidence should be of such a character as would probably produce a different result. That the evidence shall be of such a character as would probably produce a different result seems to be more in accord with the rule as established by the authorities. See the cases cited by the learned counsel for the respondent in his brief in this case.

The objection that the court erred in admitting evidence seems to us is wholly unfounded. The articles published by the defendant subsequently to the one upon which the action was brought were only introduced for the purpose of showing the personal malice and ill will of the defendant toward the plaintiff, and the jury were fully instructed by the learned circuit judge that these publications could only be considered by them in coming to a conclusion as to the personal malice and ill will of the defendant against the plaintiff in publishing the article complained of. The authorities all justify the introduction of such evidence for the purpose stated.

The learned counsel for the appellant makes a special point upon the admission of the conversation between the plaintiff and Dempsey[1] in regard to an article, which it is

---

[1] The priest previously referred to.— REP.

alleged Dempsey had caused to be published, reflecting upon the plaintiff, designated as the "X. Y. Z. Article." This article does not appear to have been offered in evidence, and the introduction of the conversation which was had between the plaintiff and Dempsey about the article does not in any way disclose what the article was, and only discloses the fact that it was offensive to the plaintiff, and that plaintiff denounced Dempsey for causing it to be published. It may be that this testimony was irrelevant, except so far as it tended to show ill feeling on the part of the plaintiff toward Dempsey, and justified him in ordering him from his house. This evidence is so remote from the real issues in this case that we are unable to see how it could have prejudiced the defendant. Again, this article is referred to in the defendant's answer as showing one cause of the enmity of the plaintiff towards Dempsey, and the defendant had also on the trial, on cross-examination of one of the plaintiff's witnesses, referred to this article as a cause of quarrel between Dempsey and plaintiff. All that the plaintiff testified to in regard to this article was simply the fact that the article was considered by him as a ground of enmity toward Dempsey. It was no more than had been alleged in the answer and shown by the defendant on the cross-examination of plaintiff's witness.

It is also objected that the court erred in excluding an article offered in evidence by the defendant. This was properly excluded by the court as not having been offered until the evidence had been closed, and it was also properly excluded as being the offer of the defendant's declarations in evidence in his own behalf, which are not competent as a general rule, and there is nothing in this record taking the offered evidence out of such rule.

Some exceptions are taken to a statement made by the attorney for the plaintiff to the jury. It seems that the court called the attorney to order for making the remark

complained of, and it does not appear that the attorney persisted in his remarks in that line thereafter. We do not think this was error.

There was another statement made by the plaintiff's counsel as to what had been proved in the case in regard to the allegation that Dempsey had read plaintiff's letter to his housekeeper. This was objected to by the defendant's counsel. Plaintiff's counsel insisted that the evidence showed that it had been so read. The defendant's counsel insisted there was no such proof. The court declined to interfere, saying to the jury that they would remember whether or not there was such testimony; that he did not remember. We think there was no error in this statement by the court. He could not well settle the dispute of the attorneys by stopping the argument to the jury, and making an inquisition of the evidence in the case to see which of the attorneys was right in his claim.

Exceptions are also made to the charge to the jury. The exception upon which the learned counsel for the appellant mainly relies is to that part of the charge which submits to the jury the question of finding punitory damages against the defendant. There is no contention on the part of the learned counsel for the appellant that there is not sufficient evidence in the case, if believed by the jury, to justify them in awarding punitory damages against the defendant in favor of the plaintiff; but it is claimed that the learned circuit judge did not clearly direct the jury as to what facts they must find as established in the case before they would be justified in finding such damages against the defendant.

The learned circuit judge instructed the jury upon the question of express malice and punitory damages as follows, viz: "Some other articles published in the defendant's paper have been received in evidence. The only effect, if any, they can have, is to show malice or ill will

upon the part of the defendant, if you find the main article of August 10th otherwise libelous. We sometimes use or speak of malice as implied, sometimes as expressed. Implied malice is such as may be inferred from the article alone; expressed malice, such as is shown by other words, either spoken or written or printed. As tending to show express malice, it is claimed that these other articles have some bearing upon the question of malice; whether they do or not, and, if they do, to what extent, is for you to determine. . . . The defendant is prosecuted in this action for the publication of the 10th of August, not for anything contained in other articles published, and those other publications can have no bearing against the defendant, except in the direction which I have already stated, if, in view of what you may find in reference to the article sued upon, you find them material as containing express malice. . . . I will close what I have to say by saying something upon the question of damages for your guidance, if you reach that question by finding in favor of the plaintiff. Damages in actions of this nature may be actual and punitory. Actual damages are such as the plaintiff suffered, if any, on account of the libel, if a libel is found; or injury to the feelings and character; or anguish of mind by the shame, mortification, degradation, caused by the publication. . . . Punitory damages, as distinguished from actual damages, are given by way of punishment or example, when it is found that the acts of the defendant, tending to the injury of the plaintiff, are wilful, wanton, or malicious. If you reach this question, you may give such damages on this account as, in view of the evidence, you think should be given in the exercise of good judgment and discretion." No exception is taken to any part of the above instructions, except to the last clause, beginning with the words, " If you reach this question," etc.

If I understand the defendant's exception to the charge

in relation to punitory damages, it seems to rest on the contention that the court did not correctly state to the jury what it was necessary for them to find in order to award such damages against the defendant. In examining the exception to the instruction, it does not appear to be an exception to that part in which the court undertakes to define when such damages may be awarded, but the exception is confined to that part of the instruction which leaves it to their discretion to award such damages, in case they find that such damages ought to be awarded. The learned circuit judge said: " Punitory damages, as distinguished from actual damages, are given by way of punishment or example, when it is found that the acts of the defendant, tending to the injury of the plaintiff, are wilful, wanton, or malicious." No exception is taken to this statement as a statement of the facts under which the jury would be justified in awarding punitory damages; but the learned counsel for the appellant contends that this statement of what facts must be found in order to justify the awarding of punitory damages, was not sufficiently clear and certain; and he insists that, under the previous statement in the charge, the jury might have understood that they could award punitory damages, if the jury simply found the article libelous, and that the defendant published it intentionally; and that the jury might have understood the words, " wilful, wanton, or malicious," as meaning nothing more than the malice which the law implies by the publication of a false and libelous article; and that the court should have stated that punitory damages could be awarded only when it was found that the defendant in publishing the libelous article was actuated by personal ill will or express malice against the plaintiff.

The court had already stated to the jury what was evidence of express malice and personal ill will, and that such express malice and personal ill will had a direct bearing upon the question of damages, and we think the jury must

have understood the judge, when speaking of the subject of punitory damages and the circumstances under which they might award them, as referring to the express malice and personal ill will before spoken of, and that the words, " wilful, wanton, or malicious," meant the express malice and personal ill will before spoken of, and not simply the implied malice which the law infers from the publication of a false and libelous article. If the language used was indefinite or equivocal, and the attorneys for the defendant thought it might damage the defendant, exception should have been taken, or, at least, the attention of the court should have been called to the possible misconstruction which might be put upon the language used.

The other exceptions taken to the charge of the court do not seem to be supported, and are not in fact urged upon this court as reasons for reversing the judgment in favor of the plaintiff.

It is urged that the damages in this case are large, considering all the circumstances attending the case. The question of damages in a case of this kind is peculiarly a question for the jury. And if the jury found, as they might properly have done, under the evidence, that the article published was not only false but that it was published with express malice and from personal ill will toward the plaintiff, we cannot say the damages are too great.

*By the Court.*— The judgment of the circuit court is affirmed.