Ryan vs. The Rockford Ins. Co.

RYAN, Appellant, vs. THE ROCKFORD INSURANCE COMPANY, Respondent.

*May 26 — June 21, 1893.*

(1) *Deed: Forgery.* (2) *Evidence: Appeal: Immaterial error.* (3) *Insurance against fire: Estoppel: Waiver.* (4) *New trial: Newly discovered evidence.*

1. A deed purporting to have been executed in 1884 was recorded in 1888, and was afterwards lost or destroyed. The grantor named therein died in 1884. Evidence that the deed was a printed blank filled up in writing, and that such blank was not printed until 1887 or later, is *held* to sustain a finding that the deed was a forgery.

2. The exclusion of evidence which, had it been admitted, could not have altered the result, is not a material error.

3. After an insurance company had denied all liability on a policy, a clerk of the company, in the usual course of the business of the office in which he was employed, but without the direction or knowledge of any person having authority to bind the company, sent to the insured a notice that his premium note would soon become due and asked him to remit. The clerk was ignorant of the facts, and the sending of such notice was a pure mistake. The insured made a remittance as requested, but the company at once tendered back the money. *Held*, that there was no estoppel and no waiver by the company of its defense to the policy. *Dohlantry v. Blue Mounds F. & L. Ins. Co.* 83 Wis. 181, distinguished.

4. After an action upon an insurance policy had been prosecuted for more than three years, and through three trials and one appeal, upon the sole theory that a certain deed was a genuine conveyance to plaintiff of the property insured, and the court had finally found such deed to be a forgery as claimed by defendant, it was proper to deny plaintiff's motion for a new trial on the ground of newly discovered evidence to the effect that such deed was in fact a forgery but had been substituted, without plaintiff's knowledge, for a genuine deed which had been lost or destroyed and which he had failed to record in order to conceal his ownership of the property from creditors,— it appearing that plaintiff must have been guilty of laches in not discovering such forgery and substitution, and that the witness by whom the fact was to be proved admitted his participation in the fraud, if not crime, to which he proposed to testify, and charged that it was committed by a magistrate since deceased, and it appearing further that the newly discovered evidence would not probably change the result if a new trial were granted.

Ryan vs. The Rockford Ins. Co.

APPEAL from the Circuit Court for *Rock* County.

This action was brought upon a policy of insurance against loss by fire of certain buildings and their contents. The policy was issued by defendant insurance company to plaintiff, and bears date June 15, 1888. The insured property was burned during the life of the policy, to wit, on August 14, 1888. Due proofs of loss were made. The defendant company having denied liability under the policy, this action was commenced December 8, 1888.

The complaint is in the usual form of complaints in like actions. The defense stated in the answer of the insurance company is based upon the statement of plaintiff in his written application for the insurance (a copy of which is indorsed on the policy) that he was the absolute owner of the property to be insured, and upon stipulations in the policy that such statement should be a warranty and part of the policy and the policy should be void if the same was untrue or "if the assured shall not be the sole and unconditional owner in fee of said property, both at law and in equity." It is alleged in the answer that such statement was false, and that the plaintiff was not the unconditional owner of the insured property in fee.

On the above issue, after a trial at the April term, 1889, of the circuit court, resulting in a disagreement of the jury, trial was had at the November term, 1889, which resulted in a verdict and judgment for plaintiff. On appeal this court reversed the judgment for error, and remanded the cause for a new trial. For a history of the case to that time, see 77 Wis. 611. An inaccuracy is found in the report, which should be corrected. It is said it was conceded that the premises upon which the insured building stood were conveyed to Ellen Ryan, wife of the plaintiff, April 24, 1884. The concession is that she was the owner of said premises at that date, but it is gathered from the record that the title thereto accrued in 1876.

Ryan vs. The Rockford Ins. Co.

The cause was again brought to trial at the January term, 1892, of the circuit court, before Judge BENNETT, sitting for Judge SIEBECKER, who was disqualified to try it because he had been of counsel therein. A jury was waived. The cause was tried and determined on very much the same testimony as was introduced on the former trial at the November term, 1889. The court found as facts that a certain alleged conveyance of the premises in question by Ellen Ryan to her husband, the plaintiff, dated April 24, 1884, was never executed by her, but is a forgery, and conveyed no title to plaintiff, and that plaintiff was not then or at any other time the owner of the premises of which the insured buildings were part and parcel. Such alleged conveyance is claimed to have been burned with the insured property, and the only proof of any conveyance by Ellen Ryan to the plaintiff was the record made July 13, 1888, of the alleged deed of April 24, 1884. Ellen Ryan died September 21, 1884.

Upon such finding, judgment for defendant insurance company, dismissing the complaint, was ordered and entered, May 26, 1892. A motion for a new trial was filed in March, 1892, probably after the court had orally announced its decision and judgment, but it does not appear that the court ruled directly upon it. On July 11, 1892, a motion for a new trial for newly discovered evidence, based chiefly upon an affidavit of Thomas H. Ryan, a brother of plaintiff, was submitted. The court denied the motion.

Plaintiff has taken two appeals to this court,— one from the judgment dismissing his complaint, and the other from the order denying his motion for a new trial for newly discovered evidence. A sufficient statement of the testimony will be found in the opinion.

For the appellant there was a brief signed by *Bashford, O'Connor, Polleys & Aylward,* and oral argument by *R. M. Bashford.*

*H. W. Chynoweth,* for the respondent.

LYON, C. J.   I. The appeal from the judgment will first be considered.   The judgment is attacked upon three grounds: (1) For insufficiency of proof; (2) for erroneous rulings on objections to the admission of testimony; and (3) for an alleged waiver by the insurance company of its defense to the action.   These several grounds assigned for a reversal of the judgment will be considered in their order.

1. Does the testimony support the findings and judgment?   It is undisputed that until April 24, 1884, the plaintiff was not the owner of the premises of which the insured buildings were part and parcel, but the title in fee thereto was in his wife, who died intestate in September of the same year, leaving surviving her several children, the issue of their marriage.   The contention of plaintiff on all the trials was that on April 24, 1884, his wife conveyed such premises to him by deed duly executed and delivered. Unless she did so at that time, plaintiff was never the owner of the insured buildings, and the policy in suit by its terms is null and void because of the warranty therein that he was the absolute owner thereof and the stipulation that if he was not the sole and unconditional owner thereof in fee, both at law and in equity, the policy should be void. No claim was made on either trial that Mrs. Ryan ever executed to plaintiff any conveyance of the premises other than that recorded July 13, 1888.   The instrument thus recorded was lost; probably was burned in the fire which destroyed the insured buildings.   The record thereof was read in evidence on the trial.   Much testimony was given on the trial tending to show that Mrs. Ryan executed the instrument in question in April, 1884.   Her acknowledgment thereof purports to have been taken and certified by Ira P. Bacon, Esq., a justice of the peace.   Bacon died some time during the winter of 1887–88.

On the part of the insurance company it was satisfactorily proved that the instrument recorded July 13, 1888, purporting to have been executed April 24, 1884, by Mrs.

Ryan, was a printed blank deed, filled up in writing, and that such blank deed was printed by M. J. Cantwell, of Madison, and had printed upon it Mr. Cantwell's business card. It was also satisfactorily, almost conclusively, proved that such blank deed was not printed until the spring of 1887 or later, and hence the instrument had no existence before that time, and could not have been executed by Mrs. Ryan, who died in September, 1884. On this testimony the circuit court found that the alleged deed, upon which alone the plaintiff rested his claim of title to the insured property, was a forgery. The finding is fully supported by the proofs, and we are unable to conceive any admissible theory of the case which will support different findings. We cannot, therefore, reverse the judgment for insufficiency of proof.

2. Against objections by plaintiff, statements made by Mrs. Ryan to her daughter on April 25, 1884, to the effect that she executed the deed, and her reasons for doing so, were excluded; and testimony was admitted to show that Justice Bacon, whose name does not appear as an attesting witness to the instrument in question, attested other deeds acknowledged before him about the same time; and witnesses called on behalf of the insurance company were allowed to testify to the general reputation for truth and veracity of one of plaintiff's witnesses at a place fifteen miles distant from his residence.

The above rulings are inconsequential, and, if erroneous, are insufficient to work a reversal of the judgment. Strike out the testimony received under objection, and assume the daughter would have testified that, on the day after the deed from Mrs. Ryan to plaintiff purports to have been executed, Mrs. Ryan told her daughter she executed it, and gave the most satisfactory reasons for doing so; still the proof is overwhelming that the instrument recorded in the register's office, July 13, 1888, and on which alone the

plaintiff rested his claim of title to the premises in question, was a forged instrument, and the title never vested in plaintiff by virtue thereof, but descended to the heirs of Mrs. Ryan at her decease. Hence the challenged rulings, in any view of the case, are not fatal to the judgment.

3. As to the alleged waiver by the insurance company of its defense to the action. Under date of October 4, 1888, the company notified plaintiff by letter that it denied all liability on the policy, and at the same time returned to him his proofs of loss. In November 1888, a clerk of the company, in the usual course of the business of the office in which he was employed, but without the direction or knowledge of any responsible officer or agent of the company, sent plaintiff a notice that his premium note for $16.35 would become due December 1, 1888, and asking him to remit the amount before November 20th, and authorizing him, if he did so, to retain twenty-five cents. After November 20th plaintiff remitted the amount of his note to the company. The company by its officers at once offered to return such money to plaintiff, and notified his attorneys of the fact and where the money was deposited subject to the plaintiff's or their order. Plaintiff has not accepted the money thus offered to be returned to him. The testimony clearly shows that the sending of such notice was a pure mistake, made by one having no sufficient knowledge of the facts; that it was entirely unauthorized by any person having authority to bind the company; and that it was repudiated by the company, and the money thus sent by plaintiff was at once tendered to him after the mistake was discovered, and before the plaintiff could possibly have been prejudiced thereby.

In the foregoing transactions we find no element of an estoppel or any valid waiver by the insurance company of its defense to the policy. We are aware of no case which enforces a waiver under such circumstances. The case of

Ryan vs. The Rockford Ins. Co.

*Dohlantry v. Blue Mounds F. & L. Ins. Co.* 83 Wis. 181, cited and relied upon by counsel for plaintiff, entirely fails to support their position.   In that case the acts which were held to operate as a waiver of the forfeiture of the policy there in suit were the acts of the board of directors and authorized officers of the company, done with full knowledge of all the facts.   The difference in the two cases is radical and controlling.   This case is not ruled by the *Dohlantry Case.*

We conclude that on the appeal under consideration the judgment of the circuit court must be affirmed.

II. We are now to determine the appeal from the order overruling plaintiff's motion to vacate the judgment and for a new trial for alleged newly discovered evidence.

The contention of plaintiff on the several trials of the action, and on the former appeal to this court, was that he obtained title to the premises of which the insured buildings were part and parcel under the conveyance from his wife recorded July 13, 1888, and the only general question litigated on those trials was whether that instrument was executed by Mrs. Ryan or was a forged instrument.   All other questions were subsidiary thereto.   The affidavit of Thomas H. Ryan,[1] submitted in support of the motion for

---

[1] The affidavit of Thomas H. Ryan was as follows:

STATE OF ILLINOIS, } ss.
    Cook County.      }

Thomas Henry Ryan, being first duly sworn, on oath says that he is a practicing physician, residing at 410 South Halstead St., in the city of Chicago, county of Cook and state of Illinois, with an office in the Standard Theatre Building in said city; that he has so resided in the city of Chicago continuously for more than two years last past, and that during said period he had not seen or met his brothers Michael J. Ryan, *Phil E. Ryan* or Edward J. Ryan, or other members of his family who resided in Wisconsin; that on the 20th day of June, 1892, in the city of Chicago, he received a visit at said city of Chicago from his brother, said Michael J. Ryan, who resides at the village of Waunakee, Dane county, Wisconsin, and whom he had not seen before for more than two years;

a new trial, if true, shows conclusively (and the plaintiff now admits) that the instrument thus recorded was forged by Ira P. Bacon in 1887, to the knowledge of Thomas H. Ryan, and by the latter was uttered as true by placing it where it probably would be accepted and acted upon as a genuine document. We do not say that these transactions constitute the legal offenses of forging a deed and of uttering it as true, for it may be doubtful whether the intent to injure or defraud any one, which is an essential ingredient in those crimes, was present. R. S. secs. 4454, 4455. Yet, on the principle that a person must be presumed to intend the natural and reasonable consequences of his acts, those

---

that upon said day, in a conversation with his said brother, Michael J. Ryan, in respect to the other members of the family, reference was made to a suit that their brother *Phil E. Ryan* had brought against an insurance company to recover for the loss of his house and furniture by fire, and, as deponent now recollects, the insurance company referred to was the *Rockford Fire Insurance Company*, above named; that this deponent had heard of the loss of his brother *Phil E. Ryan* by fire some years ago of his house and its contents, situated in the town of Dunn, Dane county, Wisconsin, and that there was some litigation in respect to the matter, but he had heard nothing in particular further than that the suit had been decided in favor of his said brother *Phil E. Ryan* and against said insurance company; that deponent learned from his brother, M. J. Ryan, on the 20th day of June, 1892, for the first time, that the decision in favor of said *Phil E. Ryan* and against said insurance company had been reversed upon appeal by the supreme court, and that upon a second trial in the lower court a decision had been rendered adverse to him and in favor of said insurance company, and that the ground upon which the suit had been decided against said *Phil E. Ryan* was that he was not the owner of the premises upon which the house and contents were situated, that were destroyed by fire at the time the fire occurred; that deponent then learned for the first time that the court in rendering the said decision had found that a deed of said land from Ellen Ryan to *Phil E. Ryan*, that had been left for record in the office of the register of deeds for Dane county, in July, 1888, was a forgery, and that by reason of the fact that he had no title to the premises in question the said *Phil E. Ryan* was unable to recover the amount of his said loss from said insurance company; that this deponent was then

transactions on the part of Thomas H. Ryan and Bacon, as detailed by the former, come unpleasantly near constituting those crimes as defined in the statute, for there is apparent good reason for saying that the natural tendency of those transactions would be to defraud the children and heirs of Mrs. Ryan of their inheritance from their mother, as well as to defraud the insurance company. But, however that may be, those transactions, considered from a moral standpoint alone, involve turpitude on the part of the actors therein, and seriously impair the credibility of Thomas H. Ryan, who deposes thereto.

There is another feature in the affidavits in support of

greatly disturbed by this information, as he knew that the original deed had been destroyed and that another deed of the same premises had been prepared by Ira P. Bacon and substituted by this deponent in place of the original deed that had been destroyed.

The facts in connection with the matter are as follows: That late in the summer of 1887, or early in the autumn of that year, this deponent was visiting his relatives in Dane county, Wisconsin, and was stopping with his brother Edward J. Ryan, at the village of Waunakee; that the house of said Edward J. Ryan had recently been destroyed by fire in the town of Burke, in said Dane county, and that said Edward J. Ryan had removed to a cheese house in the village of Waunakee, about two blocks distant from the residence of Ira P. Bacon; that this deponent knew Ira P. Bacon very well in his lifetime; that he had lived at one time at Waunakee, and was familiar with that part of the country and was acquainted with the most of the older settlers; that the house of said Edward J. Ryan was in one disorder by reason of the recent fire and removal of his goods to the said cheese house; that one day late in August or early in September, 1887, as deponent now recollects, the said Edward J. Ryan and his wife Bridget Ryan were absent from home, having gone from the village to visit a neighbor at some distance, and that this deponent was at the house alone with their two children, Frank and George, two little boys, the oldest being about seven years old at that time, both of whom were playing about the house; that said children in some manner got possession of some papers, and were playing with them about the floor; that before this deponent was aware of what they were doing said children had torn in two and partly destroyed what appeared to be a deed, and this deponent at once rescued the papers and

Ryan vs. The Rockford Ins. Co.

the motion for a new trial which is worthy of notice. Plaintiff testified that he retained the deed of April 24, 1884, in his possession until after the death of his wife, five months later, when he left it with his brother Edward J. Ryan, for safekeeping; that about a year and a half before recording it — that is, early in 1887 — he obtained the deed from Edward and placed it with other papers in the safe of Mr. Lynch in Madison, where it remained until he took it to the register's office for record, July 13, 1888; and that he took it from that office after it was recorded, and kept it until it was lost or burned. Thomas H. Ryan, in his affidavit, fixes the date of finding the mutilated deed at the

scraps from the possession of the boys, in order to save the pieces if possible; that said children had torn in two and destroyed a portion of a paper, which had upon its back in writing, "Ellen Ryan to *Phil E. Ryan*," and in printing, "Warranty Deed;" that the signature to the paper had been torn off and destroyed, but that the writing in the upper part of the deed containing the names of the parties, and the description and the names of the witnesses in the lower left hand corner were still preserved upon the parts of the paper which this deponent had saved from destruction; that it was apparent to this deponent that the paper thus destroyed was a warranty deed from Ellen Ryan to *Phil E. Ryan*, conveying to the latter by the former forty acres of land situated in the town of Dunn, in said Dane county; that this deponent was familiar with the situation of the premises, and was aware that Ellen Ryan was then dead; that he had heard of the conveyance in her lifetime, but that he had never before, to his recollection, seen the deed; that immediately thereafter, being much disturbed, this deponent saw Ira P. Bacon and showed him the portions of the deed that he had preserved, and explained to him that the other portions had been destroyed, and at the same time informed Mr. Bacon how it had happened, and that Edward J. Ryan and his wife Bridget Ryan were absent from home; that he also spoke to said Bacon about the death of Ellen Ryan and the difficulty this might occasion his brother *Phil E. Ryan;* that said Ira P. Bacon took from the hands of this deponent the piece of paper in question, and remarked that the deed had not been recorded, as there was no indorsement of such record upon the paper; that said Ira P. Bacon then said to this deponent that it was not necessary he should say anything to anybody else in respect to this matter; that he, Ira P. Bacon, could fix it all right; that said Ira P. Bacon then

residence of his brother Edward late in the summer or early in the fall of 1887. At that time, according to plaintiff's testimony, the deed was in Lynch's safe in Madison, instead of Edward J. Ryan's residence in Waunakee, fifteen miles distant from Madison. But this very significant discrepancy is readily disposed of in an affidavit of plaintiff that he was mistaken in his testimony, and that it was considerably later in the year before he withdrew the deed from Edward and deposited it with Lynch. An affidavit of Mr. Lynch was also read on the hearing of the motion for a new trial, to the effect that plaintiff left some papers with him for safekeeping some time after June, 1887. He also

requested this deponent to call at his, said Bacon's, office in said village of Waunakee, within a short time, and he himself, the said Bacon, took the portions of said deed which had been preserved, and parted from this deponent; that a few minutes thereafter, and within less than an hour, as deponent recollects, he called at the office of the said Ira P. Bacon, in the village of Waunakee, Dane county, Wisconsin, and was then handed a deed already filled out and signed, from Ellen Ryan to *Phil Ryan*, containing, as this deponent believes, the same description as the deed which had been mutilated, as above described; that the said Ira P. Bacon then said to this deponent that if he would place the deed then handed to deponent by said Bacon with the papers, and in the place where the other deed had been taken from, the fact that the original deed had been destroyed and another substituted would never be known, and that nobody would be in any respect injured or damaged by what he had done; that said Ira P. Bacon at the same time cautioned this deponent to say nothing about the matter, as above set forth, to either said Edward Ryan or his wife or to his brother *Phil E. Ryan*, as it was best they should know nothing about the destruction of the original deed and the substitution in its place of the deed made out by the said Ira P. Bacon.; that this deponent accordingly placed the deed thus made out by said Ira P. Bacon with the papers from which it had been separated, and restored the papers, with said deed among them, to the bureau drawer from which they had been taken by said children, as deponent verily believes; that this deponent never disclosed to any person what had been done with the original deed, its destruction as aforesaid, or that another deed had been made out by said Bacon, and that the same had been placed with the papers in the bureau drawer of his brother Edward J. Ryan, as

states that, as he is informed and verily believes, among these papers there was a deed from Ellen Ryan to plaintiff, but he abstains from saying that he ever read or saw any such deed, or has any personal knowledge that any such deed ever existed.

It may further be observed that the fair inference from plaintiff's testimony is that he kept the alleged deed off the records to prevent a creditor who had recovered a large judgment against him from attempting to collect the same out of the land.

Thus, on the motion for a new trial for newly discovered evidence, the case presents the following features: (1) The plaintiff prosecuted the case vigorously for more than three years, through three trials in the circuit court and one ap-

---

above set forth, until the 20th day of June, 1892, and that the communication was then made in substance as above set forth to his said brother Michael J. Ryan; that he is informed and believes that the copy of the deed so made by said Ira P. Bacon and left in the bureau drawer of deponent's brother Edward J. Ryan, was by said Edward J. Ryan turned over to said *Phil E. Ryan*, and by the latter afterwards left for record in the office of the register of deeds for Dane county, Wisconsin, and that said copy so made out by said Ira P. Bacon, of said deed from Ellen Ryan to *Phil E. Ryan*, of the premises in question, was the document pronounced a forgery by the court; that this deponent never told either *Phil E. Ryan* or Edward J. Ryan or any other person of the facts here stated until he revealed the same to Michael J. Ryan in Chicago, and that he has not as yet disclosed to either his brother *Phil E. Ryan* or Edward J. Ryan, the facts here stated; that for some years last past there has been some unkind feeling existing between this deponent and *Phil E. Ryan*, and he has not seen *Phil E. Ryan* to speak to him for nearly five years last past. That this deponent has been advised that it is his duty to make this affidavit in order that the facts may be. made known to the court before whom said action was last tried, to the end that his brother said *Phil E. Ryan* may be exonerated from any blame or censure in the matters herein set forth. That in case of another trial of said suit by *Phil E. Ryan* against said insurance company, this deponent is willing to attend and testify to the facts above set forth, or to give his deposition in respect to the same. And further deponent saith not.                THOMAS HENRY RYAN.

peal to this court, on the sole theory that the original of
the deed recorded July 13, 1888, was a genuine conveyance
by his wife to him of the premises upon which the insured
buildings stood, and the insurance company defended the
action at great expense on the sole ground that such in-
strument was not the deed of Mrs. Ryan, but was a forgery.
This motion for a new trial admits that the company was
right and that the instrument was forged. The plaintiff
now desires to change his ground and to be allowed further
to prosecute the action on the new theory that by another
instrument, never recorded and now lost or destroyed,
Mrs. Ryan conveyed such premises to him. This, of course,
is a radical change of the grounds of action, which is not
favored by the courts, especially after the action has been
long pending. (2) The doubt and uncertainty whether the
instrument last above mentioned ever existed is caused by
the failure of plaintiff (if he ever had it) to record the same,
and the reason which he gives for such failure is that he
thereby intended to conceal his ownership of the property
to prevent his creditor from collecting a judgment against
him. The motive was a fraudulent one, and meets with no
favor in the law. (3) According to his own showing, plaint-
iff had control of the alleged substituted instrument, and
had it in his actual possession several times,— the first time
soon after such substitution. He must be presumed to
have known the handwriting of his late wife, and of his
brother, whose name appeared as a witness to the instru-
ment. A glance at their alleged signatures would have dis-
closed to him that they were not genuine. But, important
as the instrument was to him, carefully as he had preserved
it and guarded the secret of its existence, he did not be-
stow that glance upon it. In this there is a degree of laches
which, under the peculiar circumstances of this case, the
court will not entirely disregard, but will give it due weight
in determining whether a new trial should be granted or
denied. (4) The person by whom it is proposed to prove

the substitution of the forged deed for the alleged genuine one is self-impeached. He admits his voluntary connection with and participation in the fraud, if not crime, to which he proposes to testify, and thus greatly weakens, if he does not destroy, the probative force of his testimony. (5) The newly discovered testimony charges a magistrate, since deceased, with a gross fraud, if not crime, committed by him without apparent motive. It is too late for him to make any defense to the charge, and the opportunity to blacken his memory should not be granted lightly in a case where, as here, the court has any discretion to prevent it. (6) A jury was waived in the case, and Judge BENNETT, before whom it was tried, was required to determine the facts established by the testimony. The denial of the motion for a new trial is equivalent to a ruling that the alleged newly discovered evidence would not change the result were a new trial granted. After a careful examination of all the testimony, and upon due consideration thereof and of all the reasonable probabilities of the case, we are constrained to say that, had Thomas H. Ryan testified as a witness upon the trial to the statements contained in his affidavit, and had the court refused to find that Mrs. Ryan ever conveyed the premises in question to her husband, we could not, as at present advised, hold that such refusal was error; hence we are of the opinion that the alleged newly discovered evidence would not probably change the result were a new trial granted. *Grace v. McArthur*, 76 Wis. 641.

If there is a case in the books in which a new trial has been granted where so many and so persuasive reasons combined to prompt the court to deny it, we have failed to find it. Certainly, no such case has been cited by the learned counsel for plaintiff. We conclude that the court properly denied the motion for a new trial, and that the order in that behalf should not be disturbed.

*By the Court.*— The judgment and the order of the circuit court are affirmed.